Sparks, et al., *vs.* Weedon.

(Decided Feb'y 26th, 1864.)

EDWARD SPARKS AND WILLIAM GLOVER, EX'RS AND TRUSTEES UNDER THE WILL OF ELIZA MILLER, *vs.* ALICE WEEDON, BY WILLIAM WEEDON HER FATHER AND NEXT FRIEND.

WILL: SPECIFIC LEGACIES: ADMINISTRATION:—INTEREST ON LEGACIES:— EXECUTOR AND TRUSTEE.—A testatrix by her will, after reciting that she held and was possessed of thirty-six shares of the capital stock of the Farmers Bank of Maryland, and a note or single bill drawn by James S. for $1000, bearing interest and secured by mortgage; also a note or single bill drawn by Henry H. B. for $600, bearing interest and secured by mortgage; and that she was desirous to dispose of the same to and for the use and benefit of her adopted grand-daughter, Alice W., devised as follows: "I therefore do hereby will and bequeath and devise to William G. and Dr. Edward S., my executors hereinafter named, *all the shares of stock that shall be standing in my name in the Farmers Bank of Maryland at the time of my death, also the amount of the notes of James S. and Henry H. B., or whatever may be due and owing on said notes at the time of my death*, in trust nevertheless, and to remain in the hands of my executors for the sole use and benefit of my said adopted grand-daughter, Alice W.," &c. *Item*, I give, bequeath and devise to my friend Mary A. G. *a note or single bill drawn by James I. & Co., for $1000, with legal interest thereon from date, also*

Sparks, et al., *vs.* Weedon.

*my silver plate and furniture,* all of which are now in her possession, *except one large chest containing bed clothes, which I direct my executors to give to my adopted grand-daughter, Alice W.*" HELD:

1st. That the legacies of the bank stock, the bills obligatory of James S., Henry H. B. and Jas. I. & Co., and the large chest and contents, and the silver plate and furniture, are equally specific, and on an insufficiency of the other personal estate, must all abate *pari passu.*

2nd. The personal estate is presumed to be fully administered at the expiration of thirteen months from the date of administration, and interest should be calculated on all the legacies from that period to any future period that might be selected to state an account, so that their relative value might be thereby maintained.

3rd. This mode of calculation would be, not for the purpose of charging the executors with the interest thus ascertained, but to fix the respective value of the legacies to Mary A. G. and Alice W., and thereby show what they would relatively contribute to meet the deficiency.

4th. The executors, holding the two-fold relation of executors and trustees, hold the property by operation of law in the latter capacity, after their executorship has ceased.

APPEAL from the Circuit Court for Anne Arundel County, in Equity:

The bill in this cause was filed on the 22nd of December 1856, against the appellants, as executors and trustees of Eliza Miller, who died in 1855, by Alice Weedon, an infant, by her next friend, Wm. S. Weedon, for an account and settlement of the estate of the testatrix, and with the bill was filed a copy of the will, which as far as relates to the questions involved in this case is in the following words:

"Whereas I hold and am possessed of thirty-six shares of the capital stock of the Farmers Bank of Maryland, and a note or single bill drawn by James Sands for one thousand dollars, bearing interest and secured by mortgage; also a note or single bill drawn by Henry H. Bush for six hundred dollars, bearing interest and secured by mortgage; and being desirous to dispose of the same to and for the use and benefit of my adopted grand-daughter, Alice Weedon, daughter of William Weedon and Cordelia Constance Weedon, wife of said William Weedon, after my death. I therefore do hereby will and bequeath and devise to Wil-

liam Glover and Doctor Edward Sparks, my executors hereinafter named, all the shares of stock that shall be standing in my name in the Farmers Bank of Maryland at the time of my death; also *the amount of the notes* of James Sands and Henry H. Bush, or whatever may be due or owing on said notes at the time of my death; *in trust* nevertheless, and to remain in the hands of my executors for the sole use and benefit of my said adopted grand-daughter, Alice Weedon, during her life, paying her the net annual income thereof, and after her death *in trust* for her children in equal proportions," &c.

"*Item.* I give, bequeath and devise all my body clothes, to be equally divided by my executors, to Mrs. Mary Hunter and Mrs. Elizabeth Thumbert."

"*Item.* I give, bequeath and devise to my friend Mary A. Glover, a note or single bill drawn by James Iglehart & Co., for one thousand dollars, with legal interest thereon from date, also my silver plate and furniture, all of which are now in her possession, *except one large chest containing bed clothes*, which I direct my executors to give to my adopted grand-daughter, Alice Weedon."

On the 18th of April 1857, defendants filed their joint and separate answer with two exhibits, one a copy of the inventory of deceased's estate, to the amount of $283.12, which included all the effects of the deceased, except the debts due to her, her bank stock which was specified in her will, and the wearing apparel specified in said will. The other, a copy of their account passed by the Orphans' Court, showing the payment of debts of the testatrix, expenses of settling her estate, &c., amounting to the sum of $1225.04. In this account they also charge themselves with the debts due the estate by Henry Bush, James Sands and James Iglehart & Co., on their several notes, the bank stock and the dividends accrued on same, in addition to the amount of the inventory, and after paying the debts, expenses, &c., and the specific legacy of silver plate and furniture to Mrs. Glover, the residue of the estate is distributed to Mrs.

Glover, under the devise to her of the note of James Igle-hart & Co., and to the defendants as trustee for Alice Weedon, under the devise to her of the bank stock and the money due by Sands and Bush. By this distribution, the devise of the single bill of James Iglehart & Co. to Mrs. Glover, and the bank stock and the money due by Sands and Bush, were treated by the Orphans' Court as general pecuniary legacies, and equally bound to contribute rata-bly to the payment of the debts.

To this answer the complainant filed exceptions, for want of particularity and fullness in the account of the es-tate so furnished. Afterwards the defendants filed their peti-tion for leave to file an amended and supplemental answer for the reasons therein stated, being mainly to have certain errors in their account passed by the Orphans' Court cor-rected, and as both the complainant and Mrs. Glover were dissatisfied with the distribution made of the residue of the estate by that account, and sought to hold the defendants responsible for a different mode of distribution, they de-sired the *protection* of the Court of Equity to settle these conflicting claims, and protect them from loss.

On the 9th March 1858, under leave of Court, the amend-ed and supplemental answer, with nineteen exhibits, were filed, by which the defendants sought to answer all the exceptions taken by complainant to their former an-swer, and in which they set out at length the particulars of the assets of the estate, file all their vouchers for pay-ments made, point out and ask to have corrected several errors in the receipts and disbursements in the account passed by the Orphans' Court, before referred to, which they desire to have corrected, and pray for the decision of the Court as to the mode of the payment of the legacies, Mrs. Glover claiming that the devise to her of the *note* of James Iglehart & Co., was a specific bequest, which should not abate for the payment of debts, &c., until the bequest to Alice Weedon should be exhausted, at least of that por-tion of it mentioned by the will, as the *amount* of the notes

of James Sands and Henry H. Bush, or *whatever may be due or owing* on said notes at the time of*"* the death of testatrix.

On the 11th August 1858, the Court (BREWER, J.) delivered an opinion and passed an order referring the cause to the auditor to state accounts, and in the instructions to the auditor, decided that the bequests of the note of Iglehart & Co., as well as the debts due by Sands and Bush, were all specific legacies, and must contribute ratably towards payment of debts, &c. This is the first. order appealed from.

The auditor on 24th May 1859, filed his account A, and his report. To this account and report the defendants filed their exceptions 28th May 1859, and the complainants. theirs on 1st June 1859, which were argued before the Court, and on 13th June 1859, the judge below passed a further order remanding the cause to the auditor for another account, some of the exceptions to it of each party being sustained. This order is also appealed from.

The auditor on the 6th December 1859, filed his report, with accounts B and A R, Nos. 1 and 2, to which defendants filed their exceptions 6th December 1859, and the complainant filed exceptions 7th February 1860, to accounts B and A R, No. 2, and the report relating to the same. The case was then submitted on these accounts and exceptions, and on the 15th February 1861, the Court passed a further order, by which all of the defendants' exceptions except the 1st were overruled, which order is appealed from so far as it overruled said exceptions.

On the 2nd April 1862, the Court passed its final decree, by which the auditor's account A R, No. 2, was ratified, and the bank stock and the debts due by Sands and Bush, decreed to be specific legacies, &c. From this decree as well as the previous orders of 11th August 1858, 13th June 1859, and 15th February 1861, this appeal was taken.

Sparks, et al., *vs.* Weedon.

The cause was argued before Bowie, C. J., and Bartol, Goldsborough and Cochran, J.

*Frank H. Stockett*, for the appellants :

Was the bequest to the defendants, as trustees for Alice Weedon, of "the *amount* of the *notes* of James Sands and Henry H. Bush, *or whatever may be due or owing* on said notes at the time of the death of the testatrix," a specific legacy of equal character with the bequest to Mary A. Glover of "a note or single bill drawn by James Iglehart & Co., for one thousand dollars, with legal interest thereon from date, also my silver plate and furniture," so that as such, all of said bequests must contribute ratably to the payment of debts, &c., on deficiency of other assets? It is clear that on deficiency of assets to pay debts, &c., all specifics have a priority in payment over general legacies, and they all, in this respect, stand on the same footing, unless otherwise expressed by testator. *Cornish vs. Wilson*, 6 *Gill*, 299. And general legacies must abate in favor of specific ones. *Nash vs. Smallwood*, 6 *Md. Rep.*, 394. *Ward on Legacies*, 371. And in case of a deficiency of assets to pay debts, &c., general legacies must be exhausted before specific legacies can be resorted to for contribution. *Mayo vs. Bland*, 4 *Md. Ch. Dec.*, 484.

If, therefore, the bequest to Mrs. Glover was a specific legacy, and the bequest to the trustees for the use of Alice Weedon, of the *amount* of the notes of James Sands and Bush, *or whatever may* be due on the same, was only a general pecuniary legacy, or what is known as a *descriptive legacy*, then it is clear that the bequest to Mrs. Glover could not be called on to contribute until the whole amount due on Sands and Bush's note had been exhausted in payment of debts. [The legacy to Mrs. Glover had every requisite of a specific bequest. The bequest of a *single bill* is a specific legacy. *Kent vs. Somerville*, 7 *G. & J.*, 265. There was a segregation of the particular objects from the residue of the estate, and the thing so segregated *eo nomine*

21     v. 21

was given. *Mayo vs. Bland*, 4 *Md. Ch. Dec.* 484. *Parrott vs. Warsfold*, 1 *Jac. & Walk.*, 595. *Wms. Exrs.*, 837, 838, *Lib'y Edition*, 993, 994, 995.

There is a difference between a legacy of the *amount of a note* and the note itself. A legacy of a *quantity* is ordinarily a general legacy, but may be specific. *Auther vs. Auther*, 13 *Sim.*, 432. Courts are averse to construing legacies to be specific. 2 *Wms. on Excrs.*, 995. *Innes vs. Johnson*, 4 *Ves.*, 568. *Kirby vs. Potter*, 4 *Ves.*, 748. *Webster vs. Hale*, 8 *Ves.*, 413. The indication of intention must be clear to make a legacy specific. *Smith vs. Lampton*, 8 *Dana*, 69. *Bradford vs. Haynes*, 20 *Maine*, 107. *Briggs vs. Horsford*, 22 *Pick.*, 288. *Foote, &c.*, 2 *Pick.*, 299, 302. *Coleman vs. Coleman*, 2 *Ves., Jr.*, 639, *(Sumner's notes.)* And the bequest to the trustees for Alice Weedon fails in the essentials of such a bequest as would make it specific, but the words used are only descriptive of the situation of the money intended to be bequeathed, and is nothing more than a general legacy. *Le Grice vs. Finck*, 3 *Meriv.*, 50. *Mills vs. Mills*, 7 *Simons*, 501. *Wms. on Exrs.*, 1013.

A legacy is general when it is so given as not to amount to a bequest of the particular thing of the testator distinguished from all others of the same kind. *Wms. Exrs.*, 838. This was the nature of the devise of the *amount* due on Sands and Bush's notes; the *notes themselves* were not devised. But even if the bequest of the *amount* of the notes of Sands and Bush was at all specific, it was only a specific bequest of money, and the bequest to Mrs. Glover of "my silver plate and furniture," and of the single bill of Iglehart & Co., constituted her a *specific legatee of chattels*, and as such she was entitled to the *things* bequeathed, though no funds had been left for the payment of the pecuniary legacies, such as left to Alice Weedon, or they had been required in full for the payment of debts. *Ward on Legacies*, 370. *Id.*, 16, 17. *Purse vs. Snaplin*, 1 *Atk.*, 416. *Mitchell vs. Mitchell*, 6 *Madd.*, 92. *Peterborough vs. Mortlock*, 1

*Bro.*, 566.    *Nannock vs. Horton*, 7 *Ves.*, 399.    *Chambers vs. Minchin*, 4 *Ves.*, 675.    *Fane vs. Fane*, 1 *Ver.*, 31. *Masters vs. Masters*, 1 *Peere Wms.*, 421.

The auditor was in error in assuming the 15th of October 1859, as the date of account A R, No. 2; and the error is so palpable that it is submitted this Court will at once see the great injustice done to the executors.

*A. Randall* and *A. B. Hagner*, for appellees:

In reply to the first point argued by the appellants, we insist, that the single bills or promissory notes of Bush and Sands, are *specific* legacies of the same character as that of the single bill of Iglehart and the other specific legacies. *Roper on Legacies*, 149, 155, 173, 176.    *Chase vs. Lockerman*, 11 *G. & J.*, 192, 209.    That *all* specific legacies contribute in proportion to the payment of debts when a deficiency is found to exist, is clear.    *Cornish vs. Wilson*, 6 *Gill*, 320.    1798, *ch.* 101.    *Sub-ch.* 10, *secs.* 7 & 8.    1 *Roper on Leg.*, 253.    But if these legacies were *demonstrative*, still they would only be required to contribute *pari passu* with the specific legacies, in the event of a deficiency.    *Dugan vs. Hollins*, 4 *Md. Ch. Dec.*, 139.    It will be observed that these bonds are described in the will with as much particularity as any other specifics, and that the executor's account and first answer describe them as *specific legacies*.

The 3rd, 4th, 5th and 6th exceptions to account A. R., No. 2, were properly overruled.    It was necessary for the auditor to assume a date which should embrace all the receipts by the executors, and the 15th of October 1859, including the last dividend was selected in this account, which was designed to apportion the shares to be contributed by the several specifics to the deficiency of the general assets. An examination of the auditor's report and account A. R., No. 2, will show that they are not obnoxious to the criticisms of the other side.    *Scott vs. Dorsey*, 1 *H. & J.*, 227. *Gwynn vs. Dorsey*, 4 *G. & J.*, 453.    *Beall vs. Deale*, 7 *G. & J.*, 216.    *Ricketts vs. Montgomery*, 15 *Md. Rep.*, 46.

*Dennis vs. Rush, Id.,* 73.    *Ward on Leg.,* 378, 18 *Law Lib.,* 194.    *Glenn vs Cockey,* 16 *Md. Rep.,* 446.

Where a person holds the offices of trustee and guardian, the funds, after a certain day, shall be regarded as held by him as guardian.    *Segur's Exr's vs. State,* 6 *H. & J.,* 162. *Watkins' Adm's vs. State,* 2 *G. & J.,* 220.    But even if this Court should discover errors in these accounts, they would not for that reason subject this estate to further costs by sending the cause down for further proceedings.    They can direct their own auditor to correct the accounts to meet their views of the case, and by their decree confirm the account as thus modified.

GOLDSBOROUGH, J., delivered the opinion of this Court:

The only important question for our consideration in this case, is, are the bequests made to the appellee by the last will and testament of Elizabeth Miller, general or specific legacies?

It is conceded that the bank stock of the Farmers Bank of Maryland, is a specific legacy.    In our opinion the bills obligatory of James Sands and Henry H. Bush, and the large chest and contents mentioned in the third clause of the will, are each of them, equally specific.    As to the bills obligatory, we find in 1 *Roper on Legacies,* 277, *3d Edition,* the following emphatic language: "That when the gift of the legacy is so connected with the debt or security as that the gift of the legacy and of the debt or security are the same, the intention to give nothing more than the identical debt or money due on the security is apparent and consequently the legacy will be specific."    See also 2 *Brown's C. C.,* 109.    2 *Vesey, Senr.,* 623.

After the appellants had applied all the assets of the estate (except the legacies mentioned in the will) to the payment of debts, expenses, &c., there remained a deficiency of $1593.66 to be paid by an abatement of the specific legacies *pari passu,* including the legacies of James Iglehart &

Co's note and the silver plate bequeathed to Mrs. Glover which were equally specific.

The personal estate is presumed to be fully administered at the expiration of thirteen months from the date of administration, and interest should be calculated from that period on all the legacies. Whatever might then be their relative value, that relative value would be maintained at any future period which might be selected to state an account. Upon this basis, we think the auditor's account A R, No. 2, was properly stated. Not as apprehended by the appellants, to charge them with the interest thus ascertained, but to fix the respective value of the legacies to Mrs. Glover and the appellee, and thereby show what amount they would relatively contribute to meet the deficiency. It appears from this account that the legacies of the appellee had to contribute the sum of $1139.99. This amount was appropriated by the appellants, by the application of Bush's note, $600, the bank dividends then received, $509.49, interest received on Sands' note, $120, amounting in the aggregate to $1229.49, and exceeding the appellee's proportion of the deficiency by $92.50.

The appellants holding the two-fold relation of executors and trustees, did, by operation of law, hold the appellee's property in the latter capacity after their executorship ceased; and are responsible for the bank stock and all dividends declared thereon, except those applied as above, also for Sands' note and interest with the same exception, and also the above excess of $92.50. The appellants are thus chargeable with these items or hold the same to be delivered over to any other trustee who may be appointed upon their resignation of the trust.

Though there is error in the decree of the Circuit Court in directing certain portions of the fund to be paid over to William S. Weedon, the father and next friend of the appellee, when, by the will, the appellants, as trustees, had control of the entire fund, we do not deem this error

of sufficient importance to warrant the reversal of the decree.

In our opinion the appellants had no sufficient justification for prosecuting this appeal, and therefore the appellee is entitled to her costs in this Court.

Without affirming or reversing the decree of the Circuit Court, we shall remand the cause to that Court, that a decree may be passed in conformity with the views expressed by us in this opinion.

*Cause remanded for further proceedings.*

(Decided Feby. 26th, 1864.)