## JOHN M. LITTIG, Executor, &c., and CASSANDRA A. KIRK *vs.* ELIZA G. HANCE and Others.

*General and Specific Legacies—Ademption of Legacy—Gift of Debts—Gift of a Fund—Erroneous Description—Appeal by Executor.*

There is a distinction between a gift in a will of a debt as a debt, and the gift of the sum of money produced when the debt has been recovered. In the first case the legacy is specific and the collection of the debt in the testator's lifetime will adeem the legacy. In the other case the gift extends to and includes the fund in its altered state.

A legacy will not be construed to be specific rather than general, unless the language of the will imperatively requires it.

When a fund is given subject to debts, or subject to other legacies, then a gift of the residue is not specific.

An erroneous addition to the description of the thing given by a will does not defeat the gift, when the thing is otherwise sufficiently identified, but in such cases the question is, conceding the mistake, is the intent clear upon the whole language employed.

A debt is money due upon a contract ; there must therefore be a creditor and a debtor as well as a sum due, and a contract out of which the indebtedness arises before there can be a debt.

A testatrix bequeathed as follows after certain small legacies: " And whereas the estate of my late husband, S., is indebted to me in a large sum of money for dividends, &c., to which I am entitled under the terms of his will, and also all moneys that may be due and owing to me from his estate and my late son F., after the payment of the money legacies hereinbefore mentioned, I give and devise the same absolutely to my sister-in-law, C." Under the will of the deceased husband of the testatrix, she was entitled to a life-estate in one-third of his property and certain sums were due to her as interest thereon at the time of the execution of her will. She was also then entitled to a sum as her share of commissions as an executrix of his will. She was also entitled to a sum from the sale of a business which had been conducted by her deceased son, F. After the execution of her will these sums of money were all collected by her, or by her executor, deposited in bank to her credit, and a part thereof invested and a part otherwise disposed of. *Held,*

1st. That the legacy in the above cited clause was not a specific legacy of these debts as debts, and was consequently not adeemed by their collection in the lifetime of the testatrix.

2nd. That although the sums of money bequeathed were mentioned in the will as debts, yet they were not such strictly speaking, and the intention of the testatrix was to give the money to be realized from the specified sources ; the words used being only descriptive of the then situation of the sums intended to be bequeathed.

3rd. That the will speaks from the death of the testatrix and not from its date, and carried whatever fund the testatrix possessed at her death, however invested, that answered the description in the will, and this description included all the moneys to which the testatrix was entitled from her husband's and her son's estates, whether collected by her in her lifetime or not.

When a bill is filed by an executor for the construction of the will of his testator, he has a right to appeal from a decree construing the same.

Two appeals, the one by Littig as executor, and the other by Cassandra A. Kirk, from the Circuit Court of Baltimore

City. The case is stated in the opinion of the Court. The Court below (DENNIS, J.), decreed : " That by the true inter--pretation of the last will and testament of Eliza G. Hance, the testatrix, a certified copy whereof has been offered in evidence, the legacy thereby given absolutely to Cassandra A. Kirk, the sister-in-law of the testatrix, of the indebted-ness to the testatrix from the estate of her late husband, Seth S. Hance, in a large sum of money for dividends, &c., and also of all moneys that might be due and owing to the testatrix from the estate of Seth S. Hance and her late son, Franklin I. Hance, after the payment of the money legacies mentioned in the will of the testatrix, was a specific and not a general legacy, and was intended to embrace only indebt-edness due at the time of the making of the will and remain-ing unpaid at the death of the testatrix, but did not embrace current income accruing after the date of the will to the tes-tatrix as life-tenant of her husband's estate."

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, BRISCOE, PAGE and BOYD, JJ.

*Sylvan Hayes Lauchheimer,* for the appellant, Mrs. Kirk.
Where the bequest is broad enough to admit of the con-struction that the proceeds of the debt was meant, then there is no ademption, even though the debt be paid during the lifetime of the testator. 13 *Am. & Eng. Ency. of Law,* p. 76, note; *Navey* v. *Vaunoy,* 6 Jones, ch. 188 ; *McNaugh-ton* v. *McNaughton,* 34 N. Y. 205 ; *Smith* v. *Fitzgerald,* 3 Ves. & B. 5 ; *Clark* v. *Brown,* 2 Sm. & G. 529, 530 ; 2 *Leading cases in Eq.,* pt. II, pp. 673–4. Where the gift is of a debt, and the debt is collected during the lifetime o the testator, and the proceeds have been segregated and can be followed, then the legatee is entitled to that portion which can be traced. *Clark* v. *Brown,* 2 Sm. & G. 529 ; *Dougherty* v. *Stilwell,* 1 Bradf. 307, 308. The principle of these decisions seems to be that if the fund, instead of being destroyed, remains the same, with unimportant alterations,

such slight variations will not adeem the bequest. *Dough-erty* v. *Stilwell*, 1 Bradf. 307.

The mere fact that something which is described as being due to the testator, is bequeathed, and the thing thus bequeathed is paid to the testator during his lifetime, does not work an ademption of the legacy. *Coleman* v. *Coleman*, 2 Vesey, Jr., 639; *Atty. Genl.* v. *Parkin*, Ambler, 566; *Bronson* v. *Winter*, Ambler, 59; *Boyce* v. *Williams*, 2 Rus. & Myl. 689; *LeGrice* v. *Finch*, 3 Merivale, 50; *Kirby* v. *Patter*, 4 Vesey, 748; *Gillicaume* v. *Adderley*, 15 Vesey, 384; *Sparrow* v. *Joselyn*, 16 Beav. 135.

Does not the well-known principle of law, that a partial intestacy is never favored, and that the Courts will construe otherwise, wherever it is possible so to do, supply a most potent confirmation of the general intent, as expressed in the will? Unless the testatrix meant that Mrs. Kirk should have all the moneys derived from the sources indicated, and unspent at the time of her death, there will be a partial intestacy, and Mrs. Kirk could receive those moneys only due to Mrs. Hance at the time of the making of this will, and unpaid at the time of her death. It is submitted that the predominant idea of the will is against such a construction, and clearly shows that the testatrix meant Mrs. Kirk to have everything, except the specific legacies of furniture and the pecuniary legacies, aggregating $1,700.

In view of the surrounding circumstances, it certainly could not be said that the testatrix intended to give Mrs. Kirk a mere phantom legacy. The contention of the infant defendants inevitably leads to this, since, if Mrs. Hance made that will intending the debt to pass, only in case it was still a debt at her death, when she knew that it would no longer at that time be a debt, then she practically made use of a solemn instrument to deceive the friend in whose welfare she took so much interest. A careful inquiry, in light of all the surrounding circumstances, which have already been adverted to, forces the belief that the testatrix, though calling them debts, meant merely to designate the funds from

which any moneys of which she knew would come to her, and she desired by her will to bequeath to Mrs. Kirk all her interest in the funds designated, which had not been disposed of anterior to her death. This bequest, it is submitted, merely amounts to an assignment of a fund, and what remained of that fund was to pass to Mrs. Kirk.

*W. Cabell Bruce* for the appellant, Littig.

There were six different sums of money received by Eliza G. Hance, or Mr. Littig as her executor, that were, in the shape of cash or the stocks purchased by Mr. Littig, on behalf of Eliza G. Hance, disposed of by the decree appealed from. I. The $1,610.38 deposited during the lifetime of Eliza G. Hance to the credit of her individual account at the National Marine Bank, on November 19, 1892, and which was her net one-half of the commissions allowed her and Franklin I. Hance, as the executors of Seth S. Hance, in the administration account passed by them in the Orphans' Court of Baltimore City. This sum was payable to her at the time of the making of her will on June 20, 1891. 2. The $2,933.57 deposited in the same manner in the same bank on the same day, and which was Eliza G. Hance's one-third (erroneously capitalized in the administration account) of the net income of the estate of Seth S. Hance, collected during the course of administration, and her one-third of the interest on the bank deposits down to the time of the death of Franklin I. Hance. This sum was likewise payable to her at the time of the making of her will on June 20, 1891. 3. The $3,900.56 deposited in the same manner in the same bank on January 17th, 1893, but reduced by the advances and taxes hereinbefore mentioned, and which was Eliza G. Hance's one-third of the income of the estate of Seth S. Hance, collected by her as his surviving executrix between January 29th, 1891, and December 29th, 1892. What proportion of this amount was due or collected at the time of the making of her will on June 20th, 1891, and what was collected afterwards, does

not appear from the record.    4. The $491.88 paid to Mr.
Littig, as the executor of Eliza G. Hance, by the executors
of Franklin I. Hance, after her death, and which was her
one-third of the rents of the leasehold property of her hus-
band.    And two other small sums from her husband's estate.

The Court below held that the bequest to Mrs. Kirk em-
braced only indebtedness due at the time of the execution
of the will of Eliza G. Hance, viz., June .20, 1891, and
therefore, that even if there had been no calling in during
the lifetime oi the testatrix, the bequest would have carried,
besides the $491.88, only the $1,610.38, the $2,933.57,
and such part of the $3,900.56 as reduced by the advances
and taxes, as became due before the date of the execution
of the will.    In other words, the Court held that the be-
quest spoke only as of the date of the making the will.    It
is submitted that this was error.    " With regard to personal
property, the rule has always been that a will speaks and
takes effect from the death of the testator, and the same
rule has long since been made, by statute, applicable to
real estate." *Dalrymple* v. *Gamble et al.*, 68 Md. 528 ;
*State, use of Dittman, admr.*, v. *Robinson and Campbell*, 57
Md. 501.

Assuming that the bequest to Mrs. Kirk speaks as of
the date of the death of the testatrix, this appellant con-
tends that all three of the sums mentioned, the $1,610.38,
the $2,933.57 and the $3,900.56, as now reduced, are
justly Mrs. Kirk's under the bequest, notwithstanding they
were all transferred during her lifetime by herself, as the
surviving executrix of Seth S. Hance, to herself individually.
This contention is based upon two propositions :    1. As to
these sums, no question of ademption properly arises in this
case at all.    With regard to them, it is true that the tes-
tatrix, in the bequest to Mrs. Kirk, uses language descrip-
tive of debts, which, it is admitted, when bequeathed, *qua*
debts are always adeemed by being called in during the life-
time of the testator.    But in no true sense were they debts ;
nor did their real character or essential legal qualities un--

dergo any change by their being called such by the textatrix. In bequeathing them and the other sums derivable from the same sources to Mrs. Kirk, the testatrix intended nothing more than a testamentary assignment or relinquishment of her interest in her husband's estate. *Gelbach* v. *Shively*, 67 Md. 501. And if this be so, the bequest still attaches to the funds whether called in during her lifetime or not, as they are readily susceptible of identification, and her object was simply to assign the funds themselves, in such state as they might be at the time of her death, without regard to the sources from which they came, which was a mere incident of the gift, or matter of description. 2. Even if the $1,910.38, $2,933.57 and $3,900.56, as reduced, were debts, properly speaking, the bequest thereof was not adeemed by their being called in during the lifetime of the testatrix, because what the testatrix bequeathed was not the debts, *qua* debts, but their proceeds. Where a testator bequeaths not the debts itself, but its proceeds, the bequest is not lost, even though he collects the debt in his lifetime, but the bequest will follow the proceeds, so long as the proceeds of collection are susceptible of identification, and even though a part of the proceeds are invested. This distinction is well established. 13 *Am. & Eng. Ency. of Law*, p. 76, note; *Navey* v. *Vaunoy*, 6 Jones, ch. 188; *McNaughton* v. *McNaughton*, 34 N. Y. 205; *Smith* v. *Fitzgerald*, 3 Ves. & B. 5; *Clark* v. *Brown*, 2 Sm. & G. 529; 2 *Leading cases in Equity*, pt. II, pp. 673–4; *Dougherty* v. *Stillwell*, 1 Bradf. 307, 308.

*Samuel D. Schmucker* and *George Whitelock*, for the appellees.

A specific legacy is the bequest of a particular thing or money specified and distinguished from all others of the same kind, and if the specific legacy fail by reason of the failure of the specific fund, the legatee will not be entitled to any recompense or satisfaction out of the personal estate of the testator. *England's case*, 53 Md. 468 and 469. And

it is perfectly well settled that the legacy of a debt is a specific legacy. 2 *Williams Executors* (1895), p. 440; *Kent* v. *Somervell*, 7 G. & J. 262; *Sparks* v. *Weedon*, 21 Md. 157, 158, 164; *Beach on Wills*, sec. 140; *Chase* v. *Lockerman*, 11 G. & J. 279.

The general rule is that in order to complete the title of a specific legatee to his legacy, the thing bequeathed must, at the testator's death, remain in specie as described in the will. 2 *Williams Executors* (1895), p. 632. It would seem, therefore, that the sums of $1,610.38 and $2,933.37 due to Mrs. Hance from the estate of her husband at the time of the making of her will for commissions and income included in his administration account, answered to the description of indebtedness in the gift to Mrs. Kirk, but that the latter's title thereto is not complete because the legacy was adeemed by the payment of the debt during the lifetime of the testatrix. An ademption is the extinction of a legacy in consequence of some act of the testator in his lifetime whereby at his death the subject of the bequest fails to correspond to the description thereof in the will. *Beach on Wills*, sec. 145. And if a specific bequest is made of a debt owing to a testator, and the debt is paid to him before his death, the collection of the debt is an act of the testator that will adeem the legacy whether the payment was voluntary or compulsory. *Smith's Appeal*, 103 Pa. St. 569; *Wyckhoff* v. *Perrine*, 37 N. J. Eq. 118–121; 2 *Williams Executors* (1895), p. 635. Indeed, the intention to adeem will not be considered beyond the expressions in the will. *Ford* v. *Ford*, 25 N. H. 216, 217. And when the debt which is the subject of the gift is paid off, the legatee cannot, to maintain the legacy, trace the money into the hands of another party, merely because the testator has not spent it in his lifetime, and it does not, therefore, cease to be within the rule of ademption, as where the testator has the money on deposit in a bank. *Watson's case*, 11 Hare, 175. In Maryland, certainly, the relation of banker and depositor is merely that of debtor and creditor, and money deposited in a bank

does not remain in specie in the banker's hands, nor does it continue to be the property of the depositor. *Horwitz* v. *Ellinger*, 31 Md. 503 ; *Hardy* v. *Chesapeake Bank*, 51 Md. 585. Although this reasoning seems hardly necessary in the present case, as the fund cannot, in fact, be identified, inasmuch as it was deposited in an account which had been running for some years, and stocks had been bought with it, and living and other expenses paid out of it, and it had not been kept separate from the rest of the estate of the testatrix, as was the case in *Clark* v. *Brown*, 2 Smale & Giff, 530, which was relied on by the appellants in the lower Court.

McSHERRY, J., delivered the opinion of the Court.

The will of Eliza G. Hance, dated June the twentieth, 1891, contains the following clause : " And whereas the estate of my late husband, Seth S. Hance, is indebted to me in a large sum of money for dividends, etc., to which I am entitled under the terms of his will, and also all moneys that may be due and owing to me from his estate and my late son, Franklin I. Hance, after the payment of the money legacies hereinbefore mentioned, I give and devise the same absolutely to my sister-in-law, Cassandra A. Kirk." What is the meaning of this clause ; or what did the testatrix intend to dispose of by it ? This is the question now before us.

As the decision of the case necessarily turns upon the meaning of the words used by the testatrix when viewed in connection with all the circumstances that surrounded her, it may not be amiss to quote at the threshold an observation made by LORD WENSLEYDALE, in *Grey* v. *Pearson*, 6 H. L. C. 108, to the effect " when the decision is * * * * * upon the meaning of words in instruments which differ so much from each other, and when the proper construction is so varied by the peculiar circumstances of each case, it seldom happens that the words of one will are a sure guide for the construction of words resembling them in another." To settled legal principles and established rules of construction

applicable to all written instruments, rather than to mere verbal analogies or accidental resemblances of language, must resort be had in solving the question before us.

Now, it is a familiar and unvarying doctrine that the intention of the testator, as gathered from the four corners of the instrument, is to prevail, if there be apt words used to effectuate it, unless it contravenes some positive principle of law or be frustrated by some unbending rule of construction assigning an inflexible meaning to particular words. And to aid in showing, not what the testator meant apart from what his words express, but what the meaning of his words really is, the circumstances surrounding him at the time he executed his will, including an inquiry into the condition and the nature and extent of his property, may always be considered and weighed. For the purpose of ascertaining the testator's intention, as expressed in his words and not as an independent fact, " you may," as remarked by LORD JUSTICE JAMES, " place yourself, so to speak, in his arm-chair, and consider the circumstances by which he was surrounded when he made his will, to assist you in arriving at his intention." *Boyes* v. *Cook*, L. R. 14, Ch. D. 56. You may, in a word, surround yourself with the circumstances which surrounded him, and from that standpoint, when thus informed, you may, with more accuracy, interpret the words he has used, precisely as you may do in construing a written contract. *Nash* v. *Towne*, 5 Wall. 689 ; *Shore* v. *Wilson*, 9 Clark & Fin. 569.

Apart from the funds and money alluded to in the clause quoted from the will and apart from a few trifling and insignificant articles of household furniture disposed of by prior clauses of the same will, it is not shown that the testatrix possessed, at the time she made her will or at the date of her death, any other property whatever. The value of what she did have is approximately five thousand dollars. That she did not design to die intestate as to any of her property is a presumption which the law raises, from the mere fact of a will having been made. *State, use of Dittman*

v. *Robinson & Campbell,* 57 Md. 500.    And when a will
has been executed it is the settled policy of the Courts
that they will struggle against a partial intestacy, especially
when resort must be had to a forced and unnatural con-
struction of the words used to produce such an intestacy.
*Booth* v. *Booth,* 4 Ves. 403 ; *Johnson* v. *Safe Deposit Co.,*
79 Md. 18.

When the will was executed the testatrix was a childless
widow and was entitled from her husband's and her son's
estates to the several sums of money which will be alluded
to in a moment ; and these constituted the bulk of her es-
tate.    Her son had died some months before the date of
her will, leaving three children, to whom he bequeathed his
entire property, valued at over two hundred thousand dol-
lars.    These three children of her deceased son were her
only descendants, and they were fully and amply provided
for by their father's will.    Under her husband's will she was
entitled to a life-estate in one-third of his property and the
residue of that property was given absolutely to the son.
Mrs. Kirk, the legatee claiming under Mrs. Hance's will,
was the latter's sister-in-law, a widow herself, with seven
children and in very destitute circumstances.    Between the
testatrix and this sister-in-law the most cordial and affec-
tionate relations existed.    Her grandchildren and Mrs.
Kirk were nearest to her.    The grandchildren were amply
provided for ; the sister-in-law was poor, and the testatrix's
whole estate was small and of comparatively trifling value.
The acquisition of the whole of it by the grandchildren
would have been of slight consequence to them ; the pos-
session of it by the sister-in-law would be of great moment
to her.    This was all obviously known to the testatrix and
was fully appreciated by her, and accordingly in her will
she gave to the granddaughters some small articles of
household furniture ; then to other parties seventeen hun-
dred dollars in pecuniary legacies, and then to Mrs. Kirk
that which is described in the clause heretofore transcribed,
and which in fact constituted the entire residuum of her
property.

Seth S. Hance, the husband of the testatrix, died in May, 1884. By his will, to which allusion has been made, he appointed his son executor and his widow executrix of his estate. They assumed the duties pertaining to that office. In his lifetime Seth S. Hance had been engaged in the manufacture of patent medicine, and after his death the business was continued by the son. During the course of the administration of Seth S. Hance's estate the executors deposited at interest in several banks various sums belonging to the estate, and aggregating something over twenty-five thousand dollars. Upon these sums, at the date of Mrs. Hance's will, the interest accrued amounted to over three thousand dollars, and to the one-third of this earned interest she was then entitled, as subsequently determined by a decree of Circuit Court No. 2 of Baltimore City, passed on November the eleventh, 1892, in a case then depending therein. Besides the aforegoing income there had been collected by the executors over five thousand dollars of other income from the estate of Seth S. Hance, but it had been improperly capitalized, and not distributed as interest in the account stated by the executors in the Orphans' Court. By the same decree of November the eleventh, 1892, Mrs. Hance was awarded the one-third of this sum. It was due to her from her husband's estate at the date of her will. These two items make up the sum of twenty-nine hundred and thirty-three dollars and fifty-seven cents. By the same decree of November the eleventh she was directed to pay to herself, out of her husband's estate' the sum of sixteen hundred and ten dollars and thirty-eight cents for her share of the net commissions allowed to executors upon the assets of Seth S. Hance's estate. This sum was due to her when her will was executed. After the death of her son, and down to December the twenty-eighth, 1892, as surviving executrix, Mrs. Hance collected a large amount of income, her one-third of which was the sum of three thousand nine hundred dollars and fifty-six cents. This was a sum of money which became due and owing to her,

not in the sense of an indebtedness, but as an interest in her husband's estate; but what proportion of it accrued to her after the date of her will and what proportion before, does not appear, and is not material. After Mrs. Hance's death there came to the hands of her executor the sum of seven hundred and eighty-six dollars and two cents, as her share of the proceeds of sale of the patent medicine business conducted by her son after the decease of her husband, and it is obviously this money to which she refers in her will as owing to her from her late son. There are two other items, one amounting to four hundred and ninety-one dollars and eighty-eight cents, which is not in controversy, and the second, amounting to forty-one dollars and seventy-seven cents, collected by Mrs. Hance's executor from the executors of her son, it being one-third of the income derived from her husband's estate, and which accrued up to the time of her death and long after the date of her will. The whole of the twenty-nine hundred and thirty-three dollars and fifty-seven cents of income, the whole of the sixteen hundred and ten dollars and thirty-eight cents of commissions, and part of the thirty-nine hundred dollars of income above referred to were undoubtedly the " sums of money " in which, as she described it, "the estate of" 'her husband was indebted to her' " for dividends, etc.," and to which she " was entitled under the terms of his will," at the time she executed and published her own will. But, under the decree of November the eleventh, 1892, passed in a proceeding involving the construction of her husband's will and affecting the distribution of his estate, she was ordered, as surviving executrix, to draw her check in her own favor individually for these sums of twenty-nine hundred and thirty-three dollars, and sixteen hundred and ten dollars, and by a supplementary order of January the thirteenth, 1893, she was authorized to retain for her own use the other sum of thirty-nine hundred dollars. Accordingly, on November the nineteenth, 1892, she deposited to her credit, in the National Marine Bank, two checks drawn on the National

Bank of Commerce, the one for sixteen hundred and ten dollars and thirty-eight cents, which stated on its face that it was for the one-half of the net commissions allowed, the other for twenty-nine hundred and thirty-three dollars and fifty-seven cents, which stated in its face that it was for the one-third of the income. As credited to her on the books of the Marine Bank, the identity of these sums is preserved, for the entries expressly state that the one item is for one-half the commissions, and the other is for one-third of the income included in the administration account and collected from the bank deposits heretofore spoken of. On January the seventeenth, 1893, there is a deposit credited to her of thirty-nine hundred dollars and fifty-six cents, and this is clearly the same sum apportioned to her under the supplementary order of January the thirteenth, 1893. When these deposits were made, Mrs. Hance was indebted to the Marine Bank on overdrafts, and the payment of these latter, and the checking out of some other amounts, reduced the balance to her credit at the time of her death to about five thousand dollars.

The learned Judge of the Circuit Court of Baltimore City, by a decree from which these appeals are taken, held that the bequest to Cassandra A. Kirk was a specific and not a general legacy, " and was intended to embrace only indebtedness due at the time of the making of the will and remaining unpaid at the death of the testatrix, but did not embrace current income accruing after the date of the will to the testatrix as life-tenant of her husband's estate." It was further decreed that " the said specific legacy to Cassandra A. Kirk was, by the collection aforesaid, during the life of the testatrix, adeemed, except to the extent of the sum of four hundred and ninety-one dollars and eighty-eight cents collected by her executor after her death." The decree then proceeded to direct the executor of Eliza G. Hance to pay the pecuniary legacies, aggregating seventeen hundred dollars, and to pay to Mrs. Kirk the sum of four hundred and ninety-one dollars and eighty-

eight cents above specified, and to pay the residue of the estate to the guardian of these three grandchildren. From this decree the executor of Eliza G. Hance, viz: John M. Littig, and the legatee, Cassandra A. Kirk, have both appealed.

A motion has been made to dismiss the appeal taken by the executor, but as this does not reach the merits of the case, we will defer its consideration till later on.

The outline of facts just given discloses what estate Mrs. Hance was possessed of at the time she executed her will, and how she acquired it. It shows further, that the bulk of it consisted of moneys to which she was entitled, when the will was made, but which were then locked up in the estates of her husband and her son. These sums of money were not, technically or strictly speaking, debts, nor were the estates of her husband and her son, in a literal sense, indebted to her, but these moneys were sums to which she was then and would thereafter become entitled from the two designated sources. They included dividends to which under the terms of her husband's will she was entitled, and commissions to which, as one of his executors, she was likewise entitled, but in no sense were they debts at all. "A debt is money due upon a contract, without reference to the question of the remedy for its collection." *Mayor, &c., of Balto.* v. *Gill,* 31 Md. 375. There must consequently be a creditor and a debtor as well as a sum due, and there must be a contract out of which the indebtedness arises, before there can be a debt. These characteristics are inseparable from a debt. A debt can no more exist without a debtor than without a sum due. There was no relation of debtor and creditor between Seth Hance's estate and his widow, nor between her son's estate and her. On the contrary, in the one instance, the relation that did exist was that of testator and legatee, involving unpaid income accruing after the testator's death and the distinct other relation of testator and executrix involving commissions ascertained upon the settlement of her husband's estate. In the other

instance—that of the son's estate—there existed the relation of surviving partner as respects the patent medicine business.   There were no other sums due to Mrs. Hance by either her husband's or her son's estate, than those arising out of the relations just mentioned, and obviously what was given by the will to Mrs. Kirk was not given as *specific debts* that were due to the testatrix *as* debts, but was a sum of money or sums of money to be subsequently realized from the particular sources specified.

Considered in the light of the circumstances that surrounded the testatrix, the correct reading of the disputed clause is manifestly this :   " The large sums of money for dividends, &c., to which I am entitled under the terms of my husband's will, and also all moneys that may be due and owing to me from his estate and my late son, *after the payment of the money-legacies hereinbefore mentioned,* I give and devise absolutely to my sister-in-law, Cassandra A. Kirk."   And this is a bequest of the moneys thus described, and is not a specific legacy of a debt.   The words used are only descriptive of the situation of the money intended to be bequeathed, and they do not, in view of all the attendant circumstances, import a gift of specific debts *as* debts, because there were in fact no debts properly so called due to the testatrix from either of these estates.   The fact that by way of recital or additional description she declares that " whereas the estate of my late husband * * * * is indebted to me," cannot alter this obvious meaning.   As already stated, there was no indebtedness as such, due to her by her husband's or her son's estate, and an erroneous addition to the description of a thing which is given when the thing so given is otherwise sufficiently identified will not defeat the gift. *Falsa demonstratio non nocet.*   Every application of this maxim implies that a mistake has occurred in the use of language.   In all such cases the legal question is, conceding a mistake, is the intent clear upon the whole language employed? *Criss et al.* v. *Withers' Extrs.*, 26 Md. 569.   To illustrate : In the case

of *Selwood* v. *Mildmay*, 3 Ves. Jr. 306 (which is designated a very strong case by C. J. TINDAL, in *Miller* v. *Travers et al.*, 8 Bing. 244), the testator devised to his wife part of his stock in the four per cent. annuities of the Bank of England, and it was shown by parol evidence that at the time he made his will he had no stock in the four per cent. annuities, but that he had had some which he had sold out, and of which he had invested the produce in long annuities, it was held that the bequest was in substance a bequest of stock, using the word as a denomination, not as the identical *corpus* of the stock ; and as none could be found to answer the description but the long annuities, it was decided that such stock should pass, rather than the will be altogether inoperative.　And so in *Day* v. *Trig*, 1 P. Wms. 286, a devise of all the testator's freehold houses in Aldersgate street, when, in fact, he had no freehold, but had leasehold houses, was held to pass the latter, the word freehold being rejected ; the rule being that when any property described in a will is sufficiently ascertained by the description, it passes under the devise, although all the particulars stated in the will with reference to it may not be true.　See also *Doe & Dunning* v. *Lord Cranstown*, 7 M. & Wels. 1 ; *Doe & Humphreys* v. *Roberts*, 5 B. & Ald. 407 ; *Andrews* v. *Pearson*, 68 Me. 19.

There is a broad distinction between the gift of a debt *as a debt* and the sum of money produced when the debt has been recovered and has ceased to be a debt.　In the one instance the legacy is specific and the collection of the debt in the testator's lifetime will adeem the legacy.　On the other hand, the gift extends to and includes the fund in its altered state, because being a gift of the fund, the thing given will pass though it be not in the precise state it was when the will was executed.　*Clark* v. *Brown*, 2 Smale & Gif. 524.　The will speaks and takes effect from the death of the testator and not from its date.　*Dalrymple* v. *Gamble et al.*, 68 Md. 528, and it carried whatever fund the testatrix was possessed of at her death, however invested, that answered

the description in the will, and the description in the will included all moneys to which the testatrix was entitled from her husband's and her son's estates, whether collected and received by her in her lifetime or not.

If the interpretation we have placed upon the clause in question be not the correct one, it can only be erroneous on the ground that the legacy given was specific. If it was specific it has been adeemed as decided by the Court below. If adeemed there is a partial intestacy, and a partial intestacy resulting from a mere verbal construction, notwithstanding the intention of the testatrix not to die intestate at all is apparent and unmistakable. But beyond this, " Courts lean against construing a legacy to be specific, and have gone so far as to say that in no case ought a will to be so construed unless the language imperatively requires it, and accordingly, we find LORD ELDON saying, that according to well-settled rules of construction he was obliged to decide a legacy to be general, although according to his private opinion, the testator meant it to be specific." *Dryden, &c.,* v. *Owings,* 49 Md. 364. This legacy cannot be treated as specific without defeating the obvious intention of the testatrix to make Mrs. Kirk, whom she knew to be in need, the chief recipient of her property ; and without breaking through the rule just cited, though the language of the controverted clause does not imperatively require a construction leading to such results. There is another principle which forbids that the legacy be regarded as specific, and it is this : Where a fund is given subject to debts or subject to other legacies, the gift of the residue is not specific. *Harley* v. *Moon,* 1 Drewry & Smale, 623 ; *Baker* v. *Farmer,* L. R. 3 Ch. Ap. 537. The legacy given to Mrs. Kirk is that part of the described funds which remains after the prior pecuniary legacies amounting to seventeen hundred dollars have been first paid, and the clause is in consequence a residuary one as to all the moneys referred to in it.

We hold, then, that all the moneys which the testatrix had at the time of her death, which moneys were derived from

the sources mentioned in her will, that is to say, from her husband's and her son's estates, and which remain after paying the prior pecuniary legacies, passed to Mrs. Kirk, no matter how held or invested at the date of Mrs. Hance's decease. So much of the decree appealed from as denied her these funds and which held the legacy to be specific and partially adeemed, will be reversed; and the residue, awarding to the granddaughters of the testatrix and to the mother of the granddaughters specific legacies of personal property and to the pecuniary legatees the pecuniary legacies and to Mrs. Kirk the sum of four hundred and ninety-one dollars and eighty-eight cents, heretofore referred to, will be affirmed.

The motion to dismiss the appeal taken by the executor must be overruled. It is not an appeal by one who has no interest in the subject-matter of the controversy as in instances where the appellant is a mere custodian of a fund. But the bill was filed by him for a construction of his testatrix's will, and if he had the right to invoke the aid of the lower Court in ascertaining the true meaning of that will, he certainly had the right to bring the record into this Court by appeal for a review of that construction, if he conceived that by the decree below the design and purposes of the testatrix were defeated. Such appeals have been heretofore entertained without question.

> *Motion to dismiss the executor's appeal overruled. Decree affirmed in part and reversed in part, the costs to be paid out of the estate, and the cause is remanded that another decree in conformity to this opinion may be passed.*

(Decided June 19th, 1895,)