SHAMBERGER, Etc. *v.* DESSEL, et al.

[No. 454, September Term, 1964.]

*Decided December 15, 1965.*
*Motion for rehearing filed January 12, 1966, denied January 18, 1966.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

*Harry Goldman, Jr.,* with whom were *Frank C. Serio* and *McWilliams & Melvin* on the brief, for appellant.

*Delverne A. Dressel* and *Reuben Shiling,* with whom were *Paul M. Higinbothom* and *C. Osborne Duvall* on the brief, for appellees.

PRESCOTT, C. J., delivered the opinion of the Court.

This appeal involves a construction of the last will and testament of Gertrude Dessel Kratsch, who died on September 17, 1960, a resident of Anne Arundel County, Maryland. Due principally to caveat proceedings and other litigation after her death,[1] certain income, interest, and appreciation accrued to her estate before distribution,[2] and the executors, being uncertain as to the proper disposition to be made thereof, filed suit praying the court's instructions relative thereto. After the chancellor decreed that the non-residuary legatees (named in Item Two of the will, *infra*) were entitled to the same, the appellant, in his individual capacity as residuary legatee and as executor, appealed.

The pertinent provisions of Mrs. Kratsch's will follow:
"ITEM TWO: I direct that all my cash monies, including by way of description and not by way of limitation all of my monies deposited in any Building and Loan Association or Savings Bank, or monies on hand and including my United States Savings Bonds which I direct shall be cashed, shall be collected by my Executors hereinafter named, into one fund, which after payment of all my just debts, funeral ex-

---

1. See Dessel v. Goldman, Jr., 231 Md. 428; Shamberger v. Dessel, 236 Md. 318.

2. It seems to be conceded that the aggregate thereof now exceeds $14,000.

penses, expenses of last illness and all taxes and lawful expenses of administration, the entire balance thereof of said fund, I hereby give, devise and bequeath unto my legatees hereinafter named, in the proportions following each of their said names: [Here the testatrix names 22 relatives and friends and allots them portions of the fund ranging from ½ of 1% to 18%. The appellant receives 8% of this fund as well as the residuary estate.]

"ITEM THREE: All the rest, residue and remainder of my Estate of whatever nature, kind or description and wheresoever situate, which I may own at the time of my death, including by way of description and not by way of limitation my land and residence at Bar Harbor, Anne Arundel County, Maryland and the contents thereof and all of my personal belongings, I do hereby give, devise and bequeath absolutely unto my nephew, George Russel Shamberger [the appellant]."

The chancellor found from the evidence and a consideration of the entire will that it was the intention of the testatrix that all of her monies on hand, including deposits in the institutions named in the will and the proceeds of the United States Savings Bonds, form a special fund to be divided proportionately among the legatees named in Item Two, after payment of debts, taxes, and certain expenses. He held that the bequests named therein were specific; and that the provisions of Code (1957), Article 93, § 391, were not applicable to the situation presented. He, therefore, authorized and directed the executors "to distribute the interest, income and appreciation accrued since the death of the [testatrix] from the special fund set up under Item II" unto the legatees as set forth in Item Two.

Although one subsidiary contention is raised and argued in appellant's brief, in the view that we take of the appeal, it may be disposed of by answering the following questions: 1. Was the chancellor correct in directing the accrued interest, income and appreciation to be paid to the legatees named in Item Two because said legacies were specific in nature?; and 2, Did the

provisions of Article 93, § 391, render the chancellor's conclusions relative to the interest, etc., erroneous?

## I

Appellant agrees that the fund directed to be created under Item Two should "be construed with reference to the date of [testatrix'] death." The fund is shown to consist of some $119,000. 18% thereof was bequeathed to her brother; a like 18% to a sister; 8% to appellant, a nephew; 12% to one niece and 10% each to two other nieces; and then small portions to more distant relatives and friends.

Legacies have been traditionally classified as specific, demonstrative, and general; each having different properties and characteristics.[3]

In Miller, *Construction of Wills*, § 126, is found the following (with appropriate Maryland citations to support the text):

> *"Specific legacies; in general.*—A specific legacy is defined as a bequest of a particular thing, or money, specified and distinguished from all others of the same kind; as of a horse, a piece of plate, money in a purse, stock in the public funds, a security for money, which would immediately vest with the assent of the executor. In order to constitute a bequest specific there must be a segregation, of the particular property bequeathed, from the mass of the estate, and a specific gift of a specified portion to the legatee [relative to this last mentioned matter, see *Jarman, op. cit.* p. 1041, where it is said, '* * * and similarly bequests of parts of a specific fund are specific']."

Similar definitions are found in 6 *Page, Wills* (3 ed.), p. 17, and in Sykes, *Maryland Practice,* § 83; also see *Hall v. Elliott,* 236 Md. 196.

A general legacy is one which is payable out of the general

---

3. Mr. Jarman suggests a more exact and logical categorization would be to divide all legacies into specific and general ones, and then to subdivide the general legacies into those that are demonstrative and those non-demonstrative. 2 Jarman, Wills (8 ed.), p. 1043.

assets of the estate of the testator, being a bequest of money or other thing in quantity, and not separated or distinguished from others of the same kind.

For the purposes of this appeal, the following observations as to what constitutes a demonstrative legacy will suffice. Demonstrative legacies partake of the characteristics of both general and specific ones. They are general in nature, but a certain fund or piece of property is pointed out as being primarily charged with their payment. The fund or piece of property (subject, of course, under certain circumstances to possible indebtedness, etc., of the testator) is primarily liable for their payment, but, due to their "general" nature, if the fund or piece of property proves insufficient to pay them, the legatee may receive payment out of the general assets of the estate.

As in other cases involving the construction of wills, where it becomes necessary to decide into which classification a particular legacy falls, the intention of the testator, as gathered from the four corners of the will, will control, unless inconsistent with preventive principles of law. 1 Sykes, *Maryland Practice*, § 83; Miller, *Construction of Wills*, p. 347, and Maryland cases there cited.

We have concluded that the legacies named in Item Two are specific ones and the language of the will imperatively requires us to so hold. *Gardner v. McNeal*, 117 Md. 27; *Bristol v. Stump*, 136 Md. 236. There is no doubt that the monies going into, and making up, the fund created therein were owned by the testatrix at the time of her death. Said monies were clearly and explicitly segregated from other portions of her estate, and a specific portion of the fund created therefrom was given to each legatee. The possibility that the property comprising the fund might have fluctuated between the date of the will and the death of the testatrix does not prevent the legacies thereunder from being specific. *Jarman, op. cit.*, p. 1042. In *Sparks v. Weedon*, 21 Md. 156, a bequest of "the amount of the notes of James Sands and Henry H. Bush, [owed to testatrix] or whatever may be due or owing on said notes at the time of my death" was held to be specific. Where a crude will separated and distinguished the money in several banks named from the other property of the testator so that it could be identified as the par-

ticular fund bequeathed, this Court held the legacies were specific. *Miller v. Weber,* 126 Md. 658. And the fact that the testatrix herein exonerated her residuary estate from the payment of debts, expenses and taxes, etc., at the expense of the fund (before any distribution thereof) did not, we think, destroy the specific nature of the bequests. Cf. *In re Purfield's Estate,* 289 N. Y. S. 297; *Malcolm v. Malcolm,* 10 A. 2d 255 (N.H.). The above clearly brings said bequests within the scope of the defintion of specific ones quoted above, and we so hold.

We think this conclusion clearly carries out the intention of the testatrix as manifested within the four corners of the will. There are two features of specific legacies, which we have not yet mentioned: first, if such a legacy fails, the specific legatee is not entitled to payment from the assets of the testator's general estate; second, a specific legacy generally entitles the specific legatee to income and increments from the legacy from the death of the testator. It will be noted that in Item Two there are no general or quantitative designations of the legacies being for certain amounts of money, such as $1,000 to A and $2,000 to B etc. On the contrary, it provides for gifts of certain definite percentages of the corpus of the fund and no other source.[4] In other words, the legacies are couched in language which provides explicitly that if the fund failed, the legacies named therein also necessarily failed. This assuredly does not evince any manifestation on the part of the testatrix to bequeath an amount, or amounts, of money generally, for, as stated above, if the fund failed and amounted to nothing and was therefore non-existent, the percentage given to each legatee would consequently amount to nothing, and the legatees would not be entitled to any payment from general assets. This is a strong indication, we think, that the testatrix had in mind the creation of specific legacies, rather than general or demonstrative ones.

---

4. The cases are legion, which hold (or state) that a gift of the corpus of a particular fund or other property (as distinguished from merely making the gift payable out of, or charged upon, said fund or property) is a specific legacy. See for examples: Busch v. Plews, 88 A. 2d 264 (N. J. Sup.); Lenzen v. Miller, 37 N. E. 2d 833 (Ill.), Gelbach v. Shively, 67 Md. 498; In re Purfield's Estate, 289 N. Y. S. 297.

In regard to the second feature of specific legacies, mentioned above, it will be noted that the appellant-nephew received, under Item Two, 8% of the fund, and under Item Three he received "all the rest, residue and remainder" of testatrix' estate "which I [the testatrix] may own at the time of my death," which consisted of a residence and the contents thereof, the testatrix' personal belongings, and several ground rents. The use of the above quoted words "which I may own at the time of my death" is some indication, albeit somewhat slight, that the testatrix did not intend the nephew to receive, as residuary legatee, the increments from the major portion of her estate which she had set apart and segregated from the remainder thereof. But of more importance, after limiting appellant's share of the fund to 8% thereof (some $9,500), it scarcely seems possible the testatrix intended that he receive the increments from the entire fund (about $14,000 now), which she had bequeathed to 21 other persons and the appellant. This, to us, is another factor which plainly shows that the testatrix intended the legacies under Item Two to be specific.

The appellant has earnestly argued that the bequests under Item Two are general ones and cannot be held to be specific in nature. He cites five out-of-state decisions, some of very early vintage, and the following excerpt from *Littig v. Hance,* 81 Md. 416, 433: "Where a fund is given subject to debts or subject to other legacies, the gift of the *residue* (italics ours) is not specific. *Harley v. Moon,* 1 Drewry & Smale 623; *Baker v. Farmer,* L. R. 3 Ch. App. 537."

The five out-of-state cases will not be considered and discussed separately, for, after examining them with care, we find no one of them which is apposite here.

A cursory and "first-blush" reading of the quotation from *Littig* would seem to render some support to appellant's contention, but a careful analysis of the holding in that case and the decisions cited to sustain the proposition under discussion leads inexorably to the conclusion that the quotation would have to be construed out of context to aid appellant's cause.

In *Littig,* the Court was interpreting a bequest to testatrix' sister-in-law, which read as follows (according to the Court's construction of the actual clause in the will): "The large sums

of money for dividends, etc., to which I am entitled under the terms of my husband's will, and also all moneys that may be due and owing to me from his estate and my late son, *after the payment of the money-legacies hereinbefore mentioned, I* give and devise absolutely to my sister-in-law, Cassandra A. Kirk." The total amount of money received by the testatrix from these sources was some $5,000 (which after deduction of the pecuniary legacies of $1,700, amounted to about $3,300), and it comprised all, or practically all, of testatrix' estate. Her only heirs at law and next-of-kin were 3 grandchildren, who had been bountifully provided for in their father's will; the sister-in-law, a widow with 7 children, was in very impoverished circumstances. The moneys from the sources mentioned were collected by the testatrix prior to her decease; hence, it became important to determine whether the legacy to Mrs. Kirk was a specific one, for if it were specific, it had been adeemed, Mrs. Kirk would be entitled to nothing, and the testatrix would have died intestate as to the $3,300.

This Court held, rightfully we think, that the legacy was not specific. It will be noted that Mrs. Kirk was not left a definite, aliquot part of the corpus of a specific fund, as in the case at bar, but was bequeathed moneys received from certain sources *after*, and only after, the payment of named pecuniary legacies. In other words, she was left the "residue" of the fund, if there were any residue, and not a share, or portion, of the corpus of a fund to be shared with other specific legatees. The distinction is clearly made and demonstrated in several of the decisions cited in footnote 4.

The kernel of the *Littig* holding is illustrated in two short quotations from the opinion. They follow: "This legacy [Mrs. Kirk's] cannot be treated as specific without defeating the obvious intention of the testatrix to make Mrs. Kirk, whom she knew to be in need, the chief recipient of her property * * *," and "The words used are only descriptive of the situation of the money intended to be bequeathed, and they do not, *in view of all the attendant circumstances* (italics ours), import a gift of specific debts * * *." And we find nothing in the original quotation therefrom, when read in context with the rest of the opinion, in conflict with our holding above, or anything we have said previously.

Our holding relative thereto is strengthened, if indeed not rendered conclusive, by an examination of the two cases cited as authority for the quotation in *Littig,* and the case of *Page v. Leapingwell,* 18 Ves. 463, mentioned in both of the decisions. In *Harley v. Moon, supra,* a testatrix, in exercising a power of appointment, directed that the trustees should "call in and convert" certain parts of an estate to the amount of some 600£., and, after the payment of debts and expenses, should pay certain pecuniary legacies of named amounts, and stand possessed "of the residue thereof" for the benefit of her granddaughter. The fund became diminished and the question for the Court's decision was whether the pecuniary legacies and the legacy of the residue should abate proportionately. The Vice-Chancellor stated that "the question is one of intention, which must be collected from the whole instrument," and, in the present case, "the testatrix appears to me, in giving the remainder of the fund to the granddaughter, not to have intended to give her specifically an aliquot part of the fund, for this reason, that she has * * * directed that the fund should be applied in payment of her debts, and if her intention had been carried out there would not have remained a definite aliquot part of 600£. for the benefit of the granddaughter, after the payment of the particular legacies to the two daughters." (Of course, in the case at bar, the debts and expenses were directed to be paid before the divisional portion of the fund came into existence.) During the course of his opinion, the Vice-Chancellor gave this illustration. If a testatrix be disposing of a definite sum, for example 600£., and she gives "100£. each to A and B, and the remainder I give to C, without specifying the amount of the remainder, the Court has held that in the absence of anything showing a different intention, that the intention was to give the residue as a specific sum to C, just as specifically as the gifts to A and B. That is the case of *Page v. Leapingwell,*" *supra.* A similar ruling was made in *Baker v. Farmer, supra,* based upon the intention of the testator, after quoting the illustration given in *Harley.*

We have stated above that the quotation from *Littig,* when considered in the context of the opinion therein, is an accurate statement. After reading the English cases, above mentioned,

and many others in this country, we think, if stated as a general proposition, it is more precise to say, "where a fund is given subject to debts, or subject to other legacies, the gift of the residue, *ordinarily,* is not specific."

As the legacies under Item Two were specific, and as pointed out above, the legatees of such legacies, in the absence of a manifestation of intention to the contrary, are entitled to income therefrom, and increments thereto, from the death of the testatrix, it necessarily follows that the chancellor was correct in his ruling in regard to the income and increments involved herein (we are not here concerned with any question of taxes or expenses, etc., since they were ordered paid from the fund before division), unless Code (1957), Article 93, § 391,[5] changed the law relative to specific legacies.

Section 391 was enacted in 1949, and our discussion thereof will be brief, for we do not deem it necessary to construe the same, except to the extent of showing it has no effect on the present appeal other than it confirms and requires the chancellor's ruling as he did.

Some years ago, roughly around 1930, there developed a conflict in the authorities as to whether, as between life tenant and remainderman (in the absence of an indication of contrary intent on the part of the testator), income received, during the period of administration, from that part of a testator's assets which eventually was sold and used to pay debts, administration expenses and legacies, went to the life tenant as income or constituted a portion of corpus. The Maryland law was in conformity with the majority rule as said rule is stated in *Tilghman v. Frazer,* 199 Md. 620. Opposed to this was the so-called Massachusetts rule, which crystallized in 1929 in the case of *Old Colony Trust Co. v. Smith,* 165 N. E. 657 (Mass.). It will be unnecessary to set forth the difference in the rules; our only purpose in discussing them is to show that Section 391 does not compel a holding that the income and increments involved herein should go to the residuary legatee under Item Three of the will.

---

5. This section was repealed, and a new article to the Maryland Code created by the Laws of Maryland (1965), Ch. 877. No contention is made that the provisions of this article have any bearing on the case at bar.

New York formerly followed the same rule as the Maryland one; however, in 1931, it adopted a statute changing its law. 8 *Cons. Laws Service,* Personal Property Law, § 17-b. In 1949, Maryland adopted Section 391, which was apparently modeled after the New York statute. The primary purpose of Section 391 was to deal with situations encompassed within the statement made at the beginning of the last paragraph above. No such situation is involved in this appeal, and the concluding provisions of said section, which states, "nothing contained [herein] shall affect the right to income of any legatee or devisee who would otherwise be entitled to such income from property devised or bequeathed to him," completely negates an intention on the part of the Legislature to deny to specific legatees their right to income and increments on their legacies from the death of the testatrix, and compels a holding that such legatees shall receive said income and increments.

*Decree affirmed; appellant, individually, to pay the costs.*