SUSANNAH M. GELBACH *vs.* ELIZABETH SHIVELY, and others.

*Will—Construction—Legacy payable out of a particular Fund which is Insufficient to Pay it in Full.*

The father of G. died in 1879 leaving three children (including G.) as his only heirs and distributees. G. died in 1880, before the settlement of his father's estate, leaving a widow and two children. By his will, which was duly admitted to probate, after some few legacies, he gave to his brother J. and his sister E. legacies of $1000 each, " out of the portion or share of my father's estate that may come to me." He then devised and bequeathed all the rest and remainder of his estate, real and personal, to be divided into three equal parts, one of which parts he gave to his wife absolutely, and the other two-thirds he gave to his two children in equal parts, in trust for life, with remainder to their children. On the settlement of the father's estate the share of G. was paid over in equal parts to J. and E. but the amounts so received by them were not equal to the amounts mentioned in the bequests to them by G. HELD:

That said legacies to J. and E. were not general legacies, in the sense that they were, to any extent, payable out of the general personal estate of the testator, apart from the fund out of which they were made payable; and that, to the extent of the deficiency of that fund to pay such legacies in full, they must fail.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, and BRYAN, J.

*C. D. Barnitz,* for the appellant.

*Samuel D. Schmucker,* for the appellees.

The legacies to Mrs. Shively and Joseph Gelbach, are clearly not specific legacies. A specific legacy, as its name

imports, is one which is answered to by some specific arti-
cle, as a particular chattel or money in a certain bag, the
delivery of which in kind, will alone fulfil the intent of
the testator. *Kunkel vs. Macgill,* 56 *Md.,* 122 ; 2 *Redfield
on Wills, p.* 135, *\*p.* 461.

A demonstrative legacy is in the nature of a general
legacy with a certain fund pointed out for its payment,
and if the fund thus designated fails to any extent, the
legatee is, to the extent of such failure, entitled to be paid
out of the general assets of the estate. *Kunkel vs. Mac-
gill,* 56 *Md.,* 122, and cases there cited. 2 *Redfield on
Wills, p.* 136, *\*pp.* 461, 462–3 ; *Williams on Ex'rs,* 6*th Am.
Ed.,* *\*pp.* 1160–1, 1252–3 ; 1 *Roper on Legacies,* 198.

As part of George Gelbach's share of his father's estate
consisted of realty, these legacies are brought within the
familiar principle, that where a legacy or sum of money is
given *out of real estate* it will be a demonstrative legacy,
and effect will be given to it although the testator have
no such real estate or have not enough of it to pay the
legacy. 2 *Hare & Wall. Leading Cases in Eq., p.* 484,
*\*p.* 242 ; *Saville vs. Blacket,* 1 *P. Wms.,* 777, 779 ; *Fowler
vs. Willoughby,* 2 *Sims. & Stewart,* 354.

It is well settled that a demonstrative legacy is *not liable
to ademption.* 2 *Williams on Exr's,* *\*pp.* 1189, 1190 ; 2
*Redfield on Wills, p.* 136, *\*p.* 462 ; 1 *Roper on Legacies,*
198.

ALVEY, C. J., delivered the opinion of the Court.

This case was brought to obtain a judicial construction of
the will of George Gelbach, Jr., deceased, and to have deter-
mined the rights of certain parties thereunder. George
Gelbach, the testator, died in Feb., 1880, leaving a widow
and two children, and four grandchildren, all provided
for in his will, which was duly admitted to probate. The
father of George Gelbach, Jr., had died in 1879, leaving
three children, including George, as his only heirs and dis-

tributees, and he left a small estate, consisting of real and personal property in Pennsylvania, where he died, and some real property in the City of Baltimore.

George Gelbach, Jr., by his will, after giving some few legacies, made the two following bequests:

"Item. I give and bequeath out of the portion or share of my father's estate that may come to me, one thousand dollars to my brother, Joseph Gelbach."

"Item. I give and bequeath (out of the share or portion of my father's estate that may come to me) one thousand dollars to my sister Elizabeth Shively."

He then devised and bequeathed all the rest and remainder of his estate, real and personal, to be divided into three equal parts, one of which parts he gave to his wife absolutely, and the other two-thirds he gave to his two children in equal parts, in trust for life, with remainder to their children.

The estate of the father of the testator was settled after the death of George, and the proceeds of that estate, both real and personal, (with the exception of some railroad stock, distributed in the life-time of George,) were distributed, and the portion thereof distributed as George's share was paid over in equal parts to Joseph Gelbach and Elizabeth Shively, on account of the legacies to them under their brother's will. The amounts received, however, from the estate of the father, was not equal to the amount mentioned in the bequests to them by the brother; and they now claim that the balance of such amounts shall be made up from the general personal estate of George, the testator. And whether such claim can be maintained, depends upon the nature and distinctive character of the bequests—whether they are so far of a specific character as to be *exclusively* dependent for their payment upon the sufficiency of the estate or fund referred to as the source of payment, and *out of which* the amounts were given, or whether they are of the character denominated *demonstrative* legacies?

Gelbach *vs.* Shively, *et al.*

Ordinarily, a legacy of a sum of money is a general legacy; but where a particular sum is given, with reference to a particular fund for payment, such legacy is denominated in the law a *demonstrative* legacy; and such legacy is so far general, and differs so materially in effect from one properly specific, that if the fund be called in or fail, or prove to be insufficient, the legatee will not be deprived of his legacy, but he will be permitted to receive it out of the general assets of the estate. *Dugan vs. Hollins,* 11 *Md.,* 77. But such legacy is so far specific that it will not be liable to abate *with general* legacies, upon a deficiency of assets, except to the extent that it is to be treated as a general legacy, after the application of the fund designated for its payment. *Mullins vs. Smith,* 1 *Drew. & Sm.,* 204; 2 *Wm's Ex'rs,* 995.

The authorities seem to be clear in holding that whether a legacy is to be treated as a demonstrative legacy, or as one dependent *exclusively* upon a particular fund for payment, is a question of construction, to be determined according to what may appear to have been the general intention of the testator. *Creed vs. Creed,* 11 *Cl. & Finl.,* 509. For although the personal estate of the testator is the primary fund for the payment of legacies generally, particular legacies may be so provided for as to be charged upon a particular fund or estate exclusively. As was said by the Lord Chancellor, in *Saville vs. Blacket,* 1 *P. Wms.,* 779, "it is possible for a legacy to be charged in such manner upon a certain fund, as that upon its failing, the legacy shall be lost."

Here, the bequest is of a $1000 out of the testator's share or portion of his father's estate. Does this amount to anything more than a testamentary assignment or relinquishment of the testator's interest in his father's estate, to the extent of the legacies mentioned, in favor of his brother and sister, if his interest should prove to be of that amount? The language of the bequests would seem

clearly to negative the idea that the testator intended that any portion of these legacies should be paid out of his general personal estate (apart from that acquired from his father); and he manifestly supposed that his share in his father's estate would be sufficient to pay the amounts mentioned by him. The amount necessary to pay the balance of these legacies, if they are to be paid out of the general personal estate of the testator, would have to be raised out of the portions given to the testator's wife and children ; and we are clearly of opinion that such result would contravene the intention of the testator, as manifested in the general scheme of the will, and by the terms of the bequests themselves.

It is certainly true, as a general proposition, as was said by the Vice-Chancellor in *Dicken vs. Edwards,* 4 *Hare,* 276, that where a testator bequeaths a sum of money in such a manner as to show a *separate and independent intention* that the money shall be paid to the legatee *at all events,* that intention will not be held to be controlled merely by a direction in the will that the money is to be raised in a particular way, or out of a particular. fund. But where the legacy is so specific and so connected with the fund appointed for its payment as to give rise to the inference that the legacy would not have been given but for the fund as a means of payment, there the legacy will fail with the failure of the fund. *Mann vs. Copland,* 2 *Madd.,* 223, 226; *Dicken vs. Edwards,* 4 *Hare,* 276 ; *Creed vs. Creed,* 11 *Cl. & Fin.,* 509. See, also, *Hancox vs. Abbey,* 11 *Ves.,* 179.

In our opinion it is clear, that the legacies given to the brother and sister are not general legacies in the sense that they are, to any extent, payable out of the general personal estate of the testator, apart from the fund out of which they were made payable ; and that, to the extent of the deficiency of that fund to pay such legacies in full, they must fail.

It follows that the decree of the 28th of March, 1887, requiring the balance supposed to be due on the two legacies mentioned to be paid out of the general assets of the estate, must be reversed, and the cause be remanded.

*Decree reversed, and*
*cause remanded.*

(Decided 23d June, 1887.)