# WILLIAM G. SCARLETT, JR., vs. ARTHUR G. MONTELL ET AL.

*Construction of a Will—Erroneous Statement of Title to Property—Misdescription of Lot of Ground Devised—Marketable Title.*

The will of a married woman bequeated all of her property to her husband for life with power to dispose of the same by his will among her next of kin. The estate of the testatrix did not embrace any landed property in Baltimore County, but her husband owned in his own right a fee-simple estate in three acres of land in said county lying on B. lane. The husband survived his wife and in his will after reciting that he held a life estate in certain property named in his wife's will and *in* a lot of three acres on B. lane, he proceeded to devise and bequeath all the said property to a trustee to carry out the provisions of the will of his wife and then provided: "The residue and remainder of said property I give and bequeath to my nephew, W., together with my personal estate." Upon a bill for the specific performance of a contract to purchase the three-acre lot from an alienee of the residuary devisee, it was contended by the purchaser that the same did not pass under the will. *Held*,

1st. That the recital in the introductory clause of the will describing testator's estate in the lot as a life estate derived from his wife is a mistake and must be rejected in order to carry out his intention.

2nd. That the lot in question passed under the residuary clause of the will by which the testator intended to dispose of his own property after having in the preceding clauses exercised the power of appointment over his wife's property conferred by her will.

A testator was seised of a lot of three acres of land in Baltimore County lying on B. lane and of no other land there. In his will he devised a lot of three acres situated at the corner of B. lane and Rolling road. His lot was not, in fact, at the corner of that road. *Held*, that this misdescription did not defeat the devise, but that the testator intended to devise the particular lot owned by him lying on B. lane.

Appeal from the Circuit Court for Baltimore County (BURKE, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*Samuel K. Smith* (with whom was *George R. Willis* on the brief ), for the appellant.

1. From the language of the will of Wilmot Johnson one conclusion and only one can be reached, namely: That Wilmot Johnson intended thereby to dispose of only that property acquired by him under the will of his wife and that his will was made in execution of the power vested in him by her will. The residuary clause of the will of the said Johnson reads : " The residue and remainder of *said* property " and the said testator having referred only to the property acquired by him under the will of his wife, it cannot be contended that any other property passed under the residuary clause of his will, except that which the testator acquired by virtue of the will of his wife, Margaret S. Johnson. It must be presumed that the testator was under the impression that his wife was seized of some land, and that under her will the title thereto was vested in him for life with full power in him to dispose of the same by his last will and testament.

That the land records do not disclose that Margaret S. Johnson was seized of any lands, stamps the impression that Wilmot Johnson must have had, as an erroneous one. The fact that Margaret S. Johnson was not seized of any lands and that by the will of Wilmot Johnson only that property passed which he acquired under the will of his wife, Margaret S. Johnson, it conclusively follows that no title to any land passed under the will of Wilmot Johnson.

2. The description of the land referred to in the will of Wilmot Johnson cannot be made to coincide with the description of the land conveyed unto him by Lurman, so that the title to the land so conveyed to him by Lurman could not have passed under the will of Johnson. The land in the deed from Lurman and wife to Johnson, a part whereof being the land that the appellant herein agreed to purchase is not in said deed described as located on Bloomsbury lane and Rolling road, but is therein described as being on Bloomsbury lane and a road fifteen feet wide laid out on a plat of " Farmlands." On a copy of a part of a plat of " Farmlands " filed herein by agree-

ment the road fifteen feet wide is located and is shown to be a road entirely different from the Rolling road and in no place in the description of the land conveyed by Lurman and wife to Johnson is there any reference made whatsoever to the Rolling road, nor is said land on any of the plats filed herein shown to be at the corner of Bloomsbury lane and Rolling road. The appellant claims that the title to the land agreed to be purchased by him (it being part of the land described in the deed from Lurman and wife to Johnson), did not pass under the will of Wilmot Johnson, and thence to the appellees herein, but on the contrary contends that the said Johnson died intestate as to said land and that the title thereto by operation of law passed to his heirs at law, the same being persons other than those mentioned in the will of Johnson.

The appellant submits that the matters of fact and the matters of law herein are more than sufficient to raise a reasonable doubt as to the appellees' title. That the heirs at law of the said Wilmot Johnson may at any time hereafter set up a claim to the land herein referred to, and this appellant believes establish their claim, and if he is enforced to perform his contract he will not be able to hold his land in peace, neither will he be able to sell the property at its full market value.

*Frederick C. Cook* and *Harry M. Benzinger* (with whom was *Jas. S. Calwell* on the brief), for the appellees.

1. If there be no three-acre lot which passed to Wilmot Johnson in any sense under the will of his deceased wife; or if there be no such lot in existence as can fill the description of the property mentioned by Wilmot Johnson as is endeavored to be shown by one of the plats appearing in the record of this case, then we must seek for a construction of Wilmot Johnson's will that would justify, if possible the conduct of his devisees and his trustees in disposing of the property acquired by Mr. Johnson from Mr. Lurman as they have done.

It is generally assumed that when a man undertakes to make a will, he does so with the intention of disposing of all his property and the Courts accordingly struggle against con-

struing a will so as to produce a case of partial intestacy. Are there then any words in this will that justify a Court in holding that the property in controversy in this case passed under the testator's will? It is submitted that there are.

Mr. Johnson gives the residue and remainder *of said property*, to wit: the property in which he holds a life estate under his wife's will and the bonds of the Van Renssalaer Land Co., and the three-acre lot described as being at the corner of Bloomsbury lane and Rolling road (which for the sake of argument me may admit to be a misdescription of that lot), *together with his personal estate* to his nephew, Walter V. R. Berry, to be sold by him and the proceeds to be divided among his residuary legatees When he speaks of his "personal estate," he uses these words as contradistinguished from the estate derived by him under his wife's will and not in their technical sense, as meaning his own property, his individual property, whether real, personal or mixed. Such a construction draws the line of distinction between the property which is his own personal property and the property over which he has only a power of disposition by will, between his wife's property that he may dispose of by his will and the property which he individually owns and which belongs to him personally. Was not this the intention of testator? "The inquiry is not in the accurate or technical meaning of language, but into the intention which a testator had in a given case, when he used it." *Ruckle* v. *Grafflin*, 86 Md. 631.

2. Should, however, a different view be taken of the meaning of the testator, in disposing of his "personal estate" what then would be the correct construction of the terms of his will? The appellant insists that by force of the recital in the first clause of the testator's will, he only undertakes to make disposition of property in which he holds a life estate, consisting of three descriptions (1) that named in his wife's will (2) certain bonds in the Van Rensselaer Land Co., and (3) the three-acre lot mentioned in his will; that inasmuch as Wilmot Johnson had no life estate in the three-acre lot (of which the land in controversy forms part), it was not disposed of by his

will. He argues that Mr. Johnson was under the impression that his wife was seized of a three-acre lot of land and that he had power to dispose of this by his will; that it must be presumed that he intended to dispose of no other property except that acquired by him under the will of his wife; that the impression Mr. Johnson had was erroneous and that his intention being to only dispose of the property, in which he thought he had a life estate, no other property was within his contemplation when making his will; that he could not possibly have had such a false impression concerning the land conveyed *to him* by Lurman since he was fully acquainted with the circumstances of that transaction.

The appellees insist that Mr. Johnson surely intended to dispose of *a three-acre lot of land* in Baltimore County, and that if by misrecital or error he attributes his ownership of the land as arising under his wife's will instead of under the Lurman deed, this is a mere matter of misdescription in a minor particular and does not destroy the main intention indicated in the will; that this is equally true concerning the other part of the same mistake when he speaks of his interest in the land being *a life interest* under his wife's will instead of a fee-simple interest under the Lurman deed. That such a subordinate matter of description made by reference to another paper, and that erroneously, will not be allowed to defeat the true intent and object of a will in disposing of the subject-matter of a given devise to wit: the three-acre lot of ground, would seem to be clear on principle. *Littig* v. *Hance*, 81 Md. 431.

*Falsa demonstratio non nocet.* Every application of this maxim implies that a mistake has occurred in the use of language. In all such cases the legal question is conceding a mistake, is the intent clear upon the whole language employed. *Criss et al.* v. *Wither's Extrs.*, 26 Md. 569; *Patch* v. *White*, 117 U. S. 210; *Osborne* v. *McTavish*, 40 Md. 186; *Adams* v. *Morrow*, 42 Md. 434; *Chase* v. *Stockett*, 72 Md. 241.

It has been agreed in this case that Margaret Schuyler Johnson had no landed property standing in her name on the

land records of Baltimore County and that Wilmot Johnson
only had standing on those records in his name the lot of
ground described in the deed from Lurman to him, referred to
in the agreed statement of facts. And immediately following
this agreement is the deed from Lurman to Wilmot Johnson,
which deed shows that the property thereby conveyed con-
tains *three acres and 64-100 of an acre more or less.* To what
three-acre lot of land could the recital in Wilmot Johnson's
will refer, if not to this?

But the appellant says the land in question is not located
at the corner of Bloomsbury lane and the Rolling road and
therefore does not gratify the description of the land men-
tioned in Wilmot Johnson's will. At least the lot in question
is in the near neighborhood of the Rolling road and binds on
the Bloomsbury lane. Shall such an error defeat the inten-
tion of the testator in disposing of the three-acre lot in Balti-
more County? Shall his devisees be defeated of his bounty
thereby? Had Mr. Johnson spoken of the three-acre lot as
his three-acre lot in Baltimore County and subsequently de-
scribed it by this special erroneous description undoubtedly
the Courts would give effect to the general description and re-
ject the special description. *Winter* v. *White*, 70 Md. 314–17;
*Warner* v. *Miltenberger*, 21 Md. 264; *Jay* v. *Michael*, 82 Md.
12–13; *Adams* v. *Morrow*, 42 Md. 434.

PAGE, J., delivered the opinion of the Court.

The bill in this case was filed for the purpose of obtaining
the specific performance of a contract for the sale of certain
property situate in Baltimore County. The appellant de-
clines to perform upon the ground that the title of the ap-
pellees to the property contracted to be sold is not good and
merchantable. His contention is stated in his answer to the
bill of the appellees and is substantially that Arthur G. Mon-
tell acquired his title by deed from Walter V. R. Berry, trus-
tee, under the will of Wilmot Johnson, and by reference
thereto it will "affirmatively appear that the title to said prop-
erty did not pass thereby."

The facts of the case, about which there is no dispute, are that Margaret Johnson, the wife of Wilmot Johnson, died in 1897, leaving a last will by which she "devised, and bequeathed" all her estate to her husband for life "with power to will the same to her sisters or brothers, or nephews or nieces, or any of them in such portions as he may see fit." In case her husband did not survive her, she gave certain pecuniary legacies to her nephew, god-son and name-sake, respectively, each of whom she names and designates, the amount each shall receive, "to be paid in cash or in the bonds of the Van Rensselear Land Company at par as her executor, (her husband), may decide ; and in case her husband survived her, she desired him "to leave said legacies to be paid after his death." She further provided, that in case her husband did not survive her, "then after the payment of the above legacies," she gave all the rest, residue and remainder of her estate both real and personal, to her four sisters, her brother and the children of a deceased brother, in equal proportions, &c.

In October, 1899, Wilmot Johnson died leaving a last will that appears to have been executed a few days after the death of his wife. Inasmuch as the main questions now to be considered hinge upon the proper construction of its provisions we will cite here all of its disposing parts without curtailment ; viz : "Whereas under the will of my deceased wife, Margaret Schuyler Johnson, I hold a life estate in certain property named in said will, also in certain bonds of the Van Rensselaer Land Company, and in a lot of three acres situated at the corner of Bloomsbury lane and Rolling road, I hereby devise and bequeath all the said property and bonds to my nephew, Walter V. R. Berry, in trust to carry out the provisions of said will of my wife, Margaret Schuyler Johnson, as regards certain legacies contained therein as follows :

| | | | |
|---|---|---|---|
| S. V. R. Crosby | $2,000 | | To be paid in bonds of the |
| Margaret Turnbull | $2,000 | | Van Rensselaer Land Company |
| Natalie Berry | $2,000 | | pany at par, amounting to |
| Caroline Ogden | $4,000 | | $10,000. |

I also desire him to pay the following legacies :

| | | |
|---|---|---|
| C. V. R. Berry . . $4,000 | | |
| Justine V. R. Town- | | |
| send . . . . $4,000 | | |
| Harriet V. R. Crosby $4,000 | To be paid in the bonds of |
| Margaret Schuyler | the Van Ransselaer Land |
| Townsend . . . $2,000 | Company at par amounting |
| Stephen Van Rensse- | to $16,000. |
| laer, son of Eugene | |
| V. R. . . . . $2,000 | |

"The said legacies amounting to $26,000, being the amount I hold of said bonds.

"The residue and remainder of said property I give and bequeath to my nephew, Walter V. R. Berry, together with my personal estate, which I desire to be sold, one-half of the proceeds of the same I give, bequeath and devise to the said Walter Berry, and the balance to be divided between my nephews, William Bayard Van Rensselaer, Howard Van R. Howard Townsend, Stephen V. R. Townsend, in equal parts one-fourth to each."

It is agreed between the parties that the "land records of Baltimore County do not disclose the title to any landed property in Baltimore County in the name of Margaret Schuyler Johnson, and that the said land records disclose that the only property standing in the name of Wilmot Johnson on said records is the lot of ground described in the deed from Lurman to him referred to in the agreed statement of facts of which this is a part." It was further agreed that Theodore G. Lurman together with his wife on the 18th June, 1897, conveyed a tract of land in Baltimore County to Wilmot Johnson and that "the land referred to in the bill of complaint is a part of the land described in that deed." The first parcel of land conveyed by the Lurman deed, which is fully set out in the record, is described to contain three and sixty-four one hundredths acres, situate on the western side of Bloomsbury lane ; the other parcel being the easternmost half of the bed of Mellors avenue as far as the land above described extends subject to certain rights of way and drainage. From this

statement of facts it is clear that Mrs. Johnson at the time of her death owned no land situate in Baltimore County and that Mr. Johnson about a month prior to her decease became seised and possessed of a lot situate in that county along Bloomsbury lane containing between three and four acres. It is also clear that Mr. Johnson did not hold the " lot of three acres " mentioned under the will of his deceased wife ; and therefore did not and could not have intended to be understood as carrying out the wishes of his wife as expressed in her will when he included the lot in the first clause of his will, wherein he merely states of what property he proposed to dispose. He must have known at the time he made his will, that his wife had no real property situate in Baltimore County, and when it is borne in mind that the deed to him from Lurman conveying the three-acre lot was executed on the 18th June, 1897, and his own will was executed on the 30th day of September, 1897, a little more than three months afterwards, it is not reasonable to suppose that he had forgotten that he and not his wife was the owner of the lot. The dispositions of his will moreover show that no such misapprehension possessed him. The bonds of the Van Rensselaer Land Company comprised the whole of Mrs. Johnson's property of which we have any information. These are all disposed of by Mr. Johnson to the sisters and brothers, nephew or niece of his wife, and these are persons to whom Mrs. Johnson by the third clause of her will authorized him to dispose of her property. If the three-acre lot had been a part of her property which passed to him under the will of his wife, he would have no power to dispose of it otherwise than in accordance with the provisions of the third clause of her will, and the fact that he has made no attempt to bestow it upon any one who belonged to the class mentioned in said clause, makes it reasonably clear that he did not regard it as within the trust imposed upon him by her will. But apart from this the language of the will itself shows what Mr. Johnson meant. He says " whereas under the will of my deceased wife, Margaret Schuyler Johnson, I hold a life estate in certain *property* named in said will, also in certain

bonds of the Van Rensselaer Land Company, &c." Later on he states what he meant by the words "certain property" "also certain bonds, &c." His words are, "I hereby give, devise and bequeath all said property and bonds to my nephew, Walter V. R. Berry, in trust to carry out the provisions of said will of my wife—as regards certain legacies contained therein as follows:" And then proceeds to designate the persons belonging to the classes whom she had designated in her will to be benefited on her husband's death. He thus declares that what he has given to Berry in trust, is "all the said property and bonds" he held under the will of his deceased wife, "as follows"—the bonds of the Rensselaer Land Company; and this is all that he gives to "carry out the provisions of her will." All the rest and residue of the property named in the first paragraph of his will, he bestows upon "my nephews." Thus the scheme of the will is clear; it is this, he first makes disposition of all the property he held under the will of his wife, and gives it according to the directions of her will among the several members of her family "as he saw fit;" carrying out however, rigidly, the provisions of the seventh clause of her will wherein she directed that certain legacies should be paid to the persons named at his death. He then proceeds to dispose of his own property, including the three-acre lot he had already mentioned in the first paragraph and "my (his) personal estate." He gives this to his own kin—"my nephews, William Bayard Van Rensselaer, &c., in equal parts one-fourth to each."

This construction of Mr. Johnson's will would be absolutely clear but for the use of the word "*in*" to be found in the first paragraph. But notwithstanding its presence there, we think the intention of the testator is without reasonable doubt, when the language of the instrument is interpreted in the light of the surrounding circumstances. In such case, that is when the testator's intention can be made out from the whole will, when read in the light of surrounding circumstances, and that intention is clear and beyond reasonable doubt, Courts will not hesitate to give effect to the true intention, although to do

this grammatical construction as ordinarily understood must be disregarded. In *Philipps* v. *Chamberlaine*, 4 Vesey, 57, the Master of the Rolls said: "I admit, I am bound to give words their usual and accustomed import or their technical sense if they have any, unless upon a perusal of the whole will a contrary intention appears manifestly and, I say, unavoidably." There can be no doubt that the use of the word *"in"* was a mistake on the part of Mr. Johnson, if it be held that the effect of its presence in the first paragraph is to include the three-acre lot in the property which passed to Mr. Johnson under the will of his wife. It has been shown that that was not true in fact and that Mr. Johnson could not have supposed it to be true. In *Mellish* v. *Mellish*, 4 Vesey, 49, the Court said: "The rule is that wherever there is a clear mistake or a clear omission; recourse is to be had to the general scope of the will; and the general intention to be collected from it." 1 *Redfield on Wills*, 501, (marg. page.) To retain the word "in" as it appears in Mr. Johnson's will would be to make his statement absurd, for the reason that the three-acre lot was not held by him under the will of his wife nor for life only. It was his property by purchase from the Lurmans and he held it in fee. To carry out the plain intent of the testator as gathered from the whole will, the preposition "in" must be rejected. *Ruckle* v. *Grafflin*, 86 Md. 631; *Jackson* v. *Sill*, 11 Johnson, 219; *Powell* v. *Biddle*, 2 Dall. 70; *Sargent* v. *Salem Towne*, 10 Mass. 303.

But it is further contended that the lot mentioned in the will of Mr. Johnson has not been shown to be the same which was conveyed to him by Lurman. The lot covered by the agreement of sale is described in the deed of Berry, trustee, to Arthur C. Montell as being a part of a tract of land called Farmlands lying on Bloomsbury lane and beginning at a point on the northeast side of a fifteen-foot private road laid out on a plat of Farmlands, being the intersection of the west side of Bloomsbury lane and the northeast side of said private lane, thence with the said lane 270 feet, thence south 79° east 235 feet to Bloomsbury lane, thence by two other courses along

the west side of Bloomsbury lane to the place of beginning. In the will it is described as a "lot of three acres situated at the corner of Bloomsbury lane and the Rolling road." The objection is that the lot mentioned in the deed does not lie on the Rolling road. There is a plat in the record on which Rollingroad as marked runs parallel with Bloomsbury lane. There is no testimony in the record touching this plat. We have no means of understanding it except what appears on its face. Whether Rolling road is straight in its entire course or whether it joins with another road that runs into Bloomsbury lane we have no information. If it turns in its course, and with the road laid down on the plat as "not named," is called the Rolling road its entire length, then the description in the will would not be inaccurate. With respect to all such matters we have been furnished with no evidence. We do know, however, that the testator held but one three-acre lot on the Bloomsbury lane and we cannot doubt that it was his intention to dispose of it and no other. If it be assumed that it was not possible to be at the "corner of Bloomsbury lane and the Rolling road," it is evident that the testator has made a mistake in the description of his lot. It is not less clear however that, notwithstanding the misdescription, he intended to devise the particular lot lying along the Bloomsbury lane. For the reasons that have already been given we think this cannot be successfully controveted. The lot mentioned in the will, is the lot the testator then was seized and possessed of lying along the Bloomsbury lane, and being so identified that there can be no reasonable doubt as to what the lot is, the erroneous addition cannot defeat the devise. *Littig* v. *Hance*, 81 Md. 431; *Criss* v. *Withers*, 26 Md. 569; *Stockham* v. *Stockham*, 32 Md. 207; *Patch* v. *White*, 117 U. S. 210.

Upon the whole case we are of opinion that the objection to the title of the appellees are not sufficient to create a reasonable doubt as to its validity; (*Levy* v. *Iroquois Co.*, 80 Md. 305), and we will therefore affirm the decree.

*Decree affirmed.*

(Decided April 2nd, 1902.)