## CIRCUIT COURT OF BALTIMORE CITY.

Filed June 2, 1923.

WILLIAM S. TOWNSEND, ET AL.,
VS.
LUTHER GRACE, ET AL.

*Niles, Wolff, Barton & Morrow* for plaintiffs.

*F. J. Singley, Louis J. Burger, Venable, Baetjer & Howard* for defendants.

DUFFY, J.—

This proceeding was instituted for the purpose of obtaining a construction by the Court of the will of John W. Grace. The testator died May 26th, 1919. The executors paid the legacies amounting to $70,000 and turned over to the trustees designated in the will on November 3, 1919, the rest and residue of the estate of the then market value of $524,956.03. The trustees are directed to pay to certain named persons for life out of the income certain specified sums, which the testator calls annuities. Ultimately they are to pay and deliver to the Johns Hopkins Hospital a fund to be known as "the John W. Grace Fund, to enable the Johns Hopkins Hospital to extend the benefit of its pay wards to persons of moderate means." The difficulty presented to the Court for solution grows out of the meaning of two items of the will, which are as follows:

"Item Twelfth. In the event of the net annual income from my trust estate being more than sufficient to pay the above mentioned annuities, such excess of net income shall be by my trustees divided among the annuitants ratably, but before any such division of income shall be made, my trustees, their survivors or survivor of them or their successors or successor, shall be satisfied that the value of my trust estate has not been depreciated in value from any cause whatsoever.

Item Thirteenth. Upon the death of each and every annuitant above mentioned, a portion of the corpus of my trust estate as the same may then be constituted equal to the capitalization on a basis of 6 per cent of the annuity falling in by reason of the death of the annitant, shall by my trustees, the survivors or survivor of them and their or his successor or successors, be paid free, clear and discharged from the trust hereby thereon imposed, or any trust whatsoever, unto the Johns Hopkins Hospital, a corporation of the State of Maryland, to be used by said hospital for its corporate purposes, the intention of this gift, however, being to enable said hospital, by means of the net income derived from this bequest, to receive in its pay wards persons of moderate means who, in the judgment of the said trustees of the hospital, may be unable to pay the full and regular charges in such pay wards, and to give therein to such persons paying according to their means the same hospital care and attention as pay patients paying the full and regular charges receive in such pay wards."

On the date of filing the bill of complaint the market value of the securities had appreciated to the extent of $22,340.46.

The first question to be determined is: Did the testator die intestate as to any part of his estate?

I think that he did not. No contingency is left unprovided for and the next of kin get nothing by reason of a failure of the will to operate on the whole estate. This appears from a careful reading of the whole will, although it would appear from a literal acceptation of Items 12 and 13, if dissociated from the rest of the will, that about one-half of the estate is undisposed of after the termination of the annuities.

The last part of Item 12 imposes on the trustees the duty of determining whether or not the value of the corpus of the estate has been depreciated in value from any cause whatever.

The will is silent as to what the trustees shall do if they find that a depreciation has occurred. If the depreciation consists of a fall in the market value which is probably temporary, it would be permissible to withhold a part of the excess income as a special fund and then distribute it as excess income when the market value has returned to standard, which in this case is the market value on November 3, 1919.

But if the securities become worthless because of the insolvency of the corporation which has issued them, the trustees should replace the loss to the corpus from the excess income, and if this is done I can see no reason why on the appreciation in value of the estate as a whole at some future time, the money used to make good such loss should then be withdrawn from the corpus and distributed as excess income. "Depreciation" in this connection must mean something more than a fall in market value unless the fall is enough to amount, in the opinion of the trustees, to a real and permanent loss of

corpus; if, for instance, the bonds default on their coupons and the dividends on the stocks are passed.

I have not been informed that since the death of the testator there has been a default in payment of coupons or passage of dividends. It thus appears that what the trustees shall do in this matter will depend on the circumstances of the case as they transpire in the future.

The question what shall be done with this special fund, if it is ever accumulated, is not ripe for decision, and it should be reserved until some change in the estate or in the condition of the beneficiaries occurs which make it necessary to have this question adjudicated for the purpose of establishing their present rights.

The Trustees may ask for instructions as to their present duties, but not what may be their duties in future uncertain contingencies.

56 Md. 307, Heald vs. Heald.

129 Mass. 164, Minot vs. Taylor.

235 Mass. 303, Old Colony Trust Co. vs. Sargent.

It will be noted in Robinson vs. Bonaparte, 102 Md. 67, that the decree of the trial court did not declare what should be done with the accumulation of surplus income after the termination of the trust.

The principal object of the testator's bounty was the creation of the John W. Grace Fund. This is evident when we consider that the money legacies and the specific devise consume not over one-fifth of the estate and the so-called annuities are for life only·and the legacy to the daughter of Daisy Hughes is contingent on her surviving her mother, and all of the gifts to his next of kin are moderate in amount.

The question then arises what part of the corpus must be paid over to the Johns Hopkins Hospital on the death of an annuitant?

The use of the word annuities occurs for the first time in the will on the second line of Item 12 and has reference to the specified annual sums to be paid to the persons named, and in immediate connection therewith it is stated: "Such excess of net income shall be by my Trustees divided among the annuitants above mentioned ratably." This excess income from year to year will be variable or may be nothing at all but the "annuities" are certain.

It appears from Item 12 that the testator meant that the annuities should consist of the specified sums payable to the named beneficiaries plus the pro rata part of the excess of net income which must be distributed each year to·the annuitants by the Trustees. The word annuity is not correctly used in this will, but it serves the testator's purpose and makes the will no more obscure than some other word or phrase would do. This, I think, helps to make it plain that when using this term the testator had in mind the specified annual sum plus all of the excess income which the named beneficiary will get yearly under Item 12.

If this is so then what is it that "falls in" by reason of the death of the annuitant under Item 13? It is the capital sum which has been yielding the annuity thus enlarged from the excess income. This capital sum cannot be capitalized at 6 per cent without doing violence to the testator's intention with regard to the John W. Grace Fund, as I see it. For it was apparently his intention, for instance, on the death of Luther Grace that the Hospital should receive all of that part of the corpus which was yielding income to Luther Grace. In my opinion, on the death of Luther Grace the Hospital should receive 25/145 of the corpus. And likewise on the death of each of the other annuitants the Hospital should receive a proportionate number of one hundred and forty-fifths. If the annuity is to be capitalized at 6 per cent inasmuch as the annuity will vary from year to year the capitalization would vary also so that it would not be possible to capitalize it without selecting the income of the annuitant for some particular year as a basis or striking an average from the receipts of the annuitant for a number of years. I do not see any warrant in the will for this method of computation.

With the words: "On a basis of (6%) six per cent." striken out, we have the Item couched in not very lucid English, but still lucid enough to call for a withdrawal of a fraction of the corpus as each annuitant dies. such as I have indicated; for the testator must have had in mind for carrying out the "capitalization" the use of the same fraction which he intended to be used in determining in any year "Ratably"

the share of an annuitant in the excess income.

95 Md. 157, Scarlett vs. Montell.

136 Md. 552, Payne vs. Payne.

The two annuities to the Misses Pennington should be treated as a joint annuity and no part of the corpus representing these annual sums should be withdrawn until the death of the survivor of them.