WM. D. SHELLADY, INC. *v.* HERLIHY, ET AL. EX'R
OF THE ESTATE OF R. CARL BAMBERGER,
DEC'D

[No. 39, September Term, 1964.]

*Decided November 11, 1964.*

The cause was argued before HENDERSON, C. J., and PRESCOTT, MARBURY, SYBERT and OPPENHEIMER, JJ.

*Robert C. Thompson* for the appellant.

*Edward T. Miller,* with whom was *Henry P. Turner* on the brief, for the appellees.

464

OPPENHEIMER, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Talbot County construing a will in which the testator used ambiguous words to describe the subject of a bequest. A suit for construction of the will of R. Carl Bamberger was filed by his executors, the appellees. The executors are Thomas Herlihy, Jr. (Herlihy), the testator's attorney who had prepared the will, and Albert J. Matlusky (Matlusky). The suit was filed against the legatees under Item 2 of the testator's will and Wm. D. Shellady, Inc., a Delaware corporation, (the corporation) of which the testator had been the president and of whose stock he was the largest holder. Matlusky was the secretary-treasurer of the corporation and the second largest holder of its stock.

Item 2 of the will provides as follows:

"I give and bequeath to each of the following named legatees, shares of Class 'B' stock of Wm. D. Shellady, Inc. as follows:

Albert J. Matlusky—9 shares.
Reinhardt F. Bamberger—9 shares.
Earl Bamberger—5 shares.
Elizabeth Brosnahan—5 shares.
Mable McCrea—32 shares.
Vincent J. Colombo—4 shares.
Valdemar Lundberg—4 shares.
John Gibbons—4 shares.
Charles Mason—4 shares.
George Heinold—4 shares.
Jack Denny—4 shares.
Harry Donoho—4 shares.
Thomas Point—4 shares.
Mary T. Kaminski—4 shares.
Holy Trinity Lutheran Church of Wilmington, Del.—8 shares.

"The bequest of stock to Holy Trinity Lutheran Church is to be considered as a memorial to my mother and father. I request each and every one of the afore-

mentioned legatees before selling or disposing of the stock to offer the same to Wm. D. Shellady, Inc. and that the corporation acquire the stock at book value."

The persons and church named in Item 2 are hereinafter referred to collectively as "the legatees".

By the third item of his will the testator bequeathed his household effects and automobile to his housekeeper, Mable McCrea, one of the legatees under Item 2; by the fourth item, he directed that she should have charge of his funeral arrangements. In the fifth item he devised and bequeathed the residue of his estate to the corporation. By the sixth item, he designated Herlihy and Matlusky to be his executors without bond.

After the taking of testimony, Chief Judge J. DeWeese Carter filed an opinion which, by stipulation of counsel representing all parties who appeared or wished to appear at the hearing, sets forth all the facts and questions which would be set forth in a separate statement under Maryland Rule 826g.

In accordance with his opinion, Judge Carter filed an order which provides *inter alia* that "the words 'Class B' immediately following the words 'shares of' in Item 2 of the subject Will, be and the same are hereby stricken out and disregarded" and "that the Testator by Item 2 of the subject will bequeathed to the legatees therein designated, the 104 shares of Class A stock in Wm. D. Shellady, Inc. which he owned at the time of his death in the proportions therein specified * * *." The corporation has filed this appeal. The executors are named as appellees but have taken no part in the appeal. Affirmation of the lower court's order is urged by certain of the legatees other than Matlusky (some of the legatees did not take part in the proceedings below or in this appeal).

Upon the testator's death it was found that he owned 104 shares of the Class A stock of the corporation but did not own any shares of the corporation's Class B stock.

At the trial below the court admitted extrinsic testimony as to the meaning of Item 2 of the will, based on the fact that there was a latent ambiguity. Extrinsic evidence pertaining to the circumstances of the testator and of the corporation was clearly admissible. *Darden v. Bright,* 173 Md. 563, 568-570,

198 Atl. 431 (1938) and the authorities therein cited; Miller, *Construction of Wills*, §§ 42-45 (1927).

The evidence showed that in 1928 the testator and Harry W. Mason purchased all the stock of the corporation from the estate of William D. Shellady as equal partners. The business conducted by the corporation was that of installing and supplying plumbing facilities. Shortly prior to 1945, the testator and Matlusky purchased Mason's interest. The testator served as president until 1954, when he suffered a heart attack, followed by a paralytic stroke a few months later. Soon after his illness, he moved his residence from Wilmington, Delaware, to Talbot County; he relinquished the presidency of the corporation but continued as a director. He partially recovered in 1955 and from that time until 1957 made visits to the office of the corporation in Wilmington. He executed his will in 1954 and died in December, 1957. The testator had no children and had been separated from his wife since 1945. Mable M. McCrea acted as his housekeeper and nurse from 1954 until his death.

At the time of the execution of the will and at the time of the testator's death, the corporation had issued and outstanding 174 shares of Class A stock, which was the voting stock, and three shares of Class B stock, which was non-voting, and which was owned by Frank H. Hanby, the vice-president. The testator, both at the time of the execution of the will and at the time of his death, owned 104 shares of the Class A stock; 53 shares were owned by Matlusky and 17 shares by Harry J. Donoho, who succeeded the testator as president. In 1945 or 1946, the corporation had issued 23 shares of its Class B stock which was all of that stock ever issued; 20 shares of the Class B stock were originally owned by Matlusky and three by Hanby. Matlusky later surrendered his 20 shares of Class B stock for Class A stock. The testator had never in his lifetime owned any of the Class B stock. The only substantial assets owned by him at the time of his death were the 104 shares of the Class A stock. The corporation's financial statement for 1962 shows as a liability an indebtedness due to the testator's estate of some $50,000, which is disputed by the corporation. The book value of the Class A stock at the time of the testator's death was $898.40 a share.

The persons named as legatees under Item 2 of the will included the testator's brother; Matlusky; the testator's nephew and niece; his housekeeper; several employees of the corporation; and the church, whose bequest the testator stated was to be considered as a memorial to his parents. Judge Carter found that the legatees were the natural objects of his bounty. In his opinion, the Chancellor stated: "Under these circumstances, it appears obvious it was the testator's intention to bequeath his Class A stock in Item 2, as the only stock he ever owned, and that the reference to 104 shares of Class B stock was an error." The court applied the maxim of *falsa demonstratio non nocet* to the language employed in Item 2 by eliminating the words "Class B" so that the bequest reads: "I give and bequeath to each of the following named legatees shares of stock of Wm. D. Shellady, Inc. as follows:"

The appellant, the corporation, contends that the court below erred in applying the maxim based solely on the evidence admitted. It also contends that the court erred in excluding certain testimony of Herlihy and Matlusky and the rough draft of a letter from the testator to Herlihy, and that such evidence, if admitted, would have confirmed that the provisions of Item 2, as written, accurately represented the intention of the testator at the time of the execution of the will.

I

As Item 2 is written, all the bequests to the legatees named therein, in the proportions set forth, would become inoperative. The testator owned no Class B stock, either at the time he executed the will or at the time of his death. The gift of stock is a specific legacy and, as a general rule, the non-existence of the subject of such a legacy at the testator's death will defeat the gift. *Gardner v. McNeal*, 117 Md. 27, 35-37, 82 Atl. 988 (1911) and *Gelbach v. Shively*, 67 Md. 498, 10 Atl. 247 (1887). See also *Hall v. Elliott*, 236 Md. 196, 202 A. 2d 726 (1964). As Item 2 is written, the 104 shares of Class A stock which the testator owned would pass to the corporation as the testator's residuary legatee. The book value of these 104 shares of Class A stock at the time of the testator's death was in ex-

cess of $93,000. These shares were the only substantial assets owned by the testator at the time of his death.

The maxim *falsa demonstratio non nocet*,[1] which originated in England, has been applied by this Court as well as by many jurisdictions of the United States. *Littig v. Hance,* 81 Md. 416, 32 Atl. 343 (1895) ; *Scarlett v. Montell,* 95 Md. 148, 51 Atl. 1051 (1902) ; *Selwood v. Mildmay,* 3 Ves. Jr. 306 (1797) ; *Miller v. Travers,* 8 Bing. 244 (1832) ; Wigmore, *Evidence* § 2476 (3d ed. 1940) ; *Jarman on Wills,* 1146 (8th ed. 1951) ; Atkinson, *Law of Wills,* 283 (2d ed. 1953) ; Warren, *Interpretation of Wills—Recent Developments,* 49 Harv. L. Rev. 689 (1936) ; 94 A.L.R. 26, 74.

The application of the doctrine expressed by this maxim is explained in *Littig v. Hance, supra,* as follows :

> "Every application of this maxim implies that a mistake has occurred in the use of language. In all such cases the legal question is, conceding a mistake, is the intent clear upon the whole language employed? *Criss v. Withers,* 26 Md. 569. To illustrate: In * * * *Selwood v. Mildmay,* 3 Ves. Jr. 306 (which is designated a very strong case by C. J. Tindal, in *Miller v. Travers,* 8 Bing. 244), the testator devised to his wife part of his stock in the four per cent. annuities of the Bank of England, and it was shown by parol evidence that at the time he made his will he had no stock in the four per cent. annuities, but that he had had some which he had sold out, and of which he had invested the produce in long annuities, it was held that the bequest was in substance a bequest of stock, using the word as a denomination, not as the identical *corpus* of the stock; and as none could be found to answer the description but the long annuities, it was decided that such stock should pass, rather than the will be

---

1. The full maxim is *falsa demonstratio non nocet cum de corpore constat.* It is translated as follows: "Mere false description does not vitiate, if there be sufficient certainty as to the object." Broom, *Legal Maxims,* 403 (9th ed. 1924); Warren, *Interpretation of Wills—Recent Developments,* 49 Harv. L. Rev. 689, 699 (1936).

altogether inoperative. And so in *Day v. Trig,* 1 P. Wms. 286, a devise of all the testator's freehold houses in Aldersgate street, when, in fact, he had no freehold, but had leasehold houses, was held to pass the latter, the word freehold being rejected; the rule being that when any property described in a will is sufficiently ascertained by the description, it passes under the devise, although all the particulars stated in the will with reference to it may not be true. See also *Doe v. Lord Cranstown,* 7 M. & W. 1; *Doe v. Roberts,* B. & Ald. 407; *Andrews v. Pearson,* 68 Me. 19." 81 Md. at 431-32.

In *Littig,* the will of the testatrix bequeathed certain sums of money, referring to them as debts due to her. When the evidence showed that the sums were not in fact debts, it was held that the erroneous addition to the description did not defeat the bequest. In *Scarlett v. Montell, supra,* the property devised was a "lot of three acres situated at the corner of Bloomsbury lane and Rolling road." It appeared that the testator owned a lot of three acres on Bloomsbury Lane but the lot did not lie on Rolling Road. We held that the erroneous addition did not defeat the devise. Judge Page, in delivering the opinion of the Court, said:

> "We do know, however, that the testator held but one three-acre lot on the Bloomsbury lane and we cannot doubt that it was his intention to dispose of it and no other. If it be assumed that it was not possible to be at the 'corner of Bloomsbury lane and the Rolling road,' it is evident that the testator has made a mistake in the description of his lot. It is not less clear however that, notwithstanding the misdescription, he intended to devise the particular lot lying along the Bloomsbury lane. For the reasons that have already been given we think this cannot be successfully controverted. The lot mentioned in the will, is the lot the testator then was seized and possessed of lying along the Bloomsbury lane, and being so identified that there can be no reasonable doubt as to what the lot is, the

erroneous addition cannot defeat the devise. *Littig v. Hance*, 81 Md. 431; *Criss v. Withers*, 26 Md. 569; *Stockham v. Stockham*, 32 Md. 207; *Patch v. White*, 117 U.S. 210." 95 Md. at 159.

"For the application of the doctrine of *falsa demonstratio non nocet*, the words must be insensible with respect to the facts, the part to be disregarded must be a trimming rather than the body of the clause, and the remaining portion must be substantial." Warren, *Interpretation of Wills—Recent Developments*, 49 Harv. L. Rev. 689, 703 (1936).

The facts shown by the extrinsic evidence in this case comply with each of the three necessary elements for the application of the doctrine. The words "Class B" used to describe the testator's stock in Item 2 are insensible with respect to the facts because the testator did not own and never had owned any shares of the Class B stock. The part of the description to be disregarded is a trimming rather than the body of the description, for the testator not only owned shares of stock of the corporation but owned the exact number, 104, which he disposed of in Item 2 of his will. The remaining portion of the description is substantial, for by omitting the words "Class B", the item pertains exactly to the stock of the corporation which the testator did own.

The appellant contends that in *Littig* the use of the term "debts" was plainly surplusage and that the court felt free to disregard it particularly because the alternative was to require the property to pass by intestacy in direct contravention of the presumption against partial intestacy. However, the facts in *Selwood v. Mildmay, supra*, cited with approval in *Littig*, as well as those in *Scarlett v. Montell, supra*, in both of which cases the doctrine was applied, are close to the facts of the present case.

The appellant cites *Miller v. Weber*, 126 Md. 658, 95 Atl. 962 (1915) to support its contention that the doctrine does not apply to the testator's will. In that case, the testator had bequeathed "cash in the Baltimore Savings Bank." He had no account in that bank but did have an account in the German Savings Bank which was not otherwise bequeathed or referred

to in his will. The legatee contended that the word "Baltimore" should be excised so that the bequest would read "cash in the Savings Bank" and would then necessarily apply to the deposit in the German Savings Bank. This Court, while referring to the maxim and citing *Littig* and *Scarlett* with approval, held that the doctrine did not apply to the facts before it on the ground that the testator may have had money deposited in other savings banks at the time the will was executed. We do not regard *Miller v. Weber, supra,* as controlling the present case; here, the testator had no Class B stock of the corporation at the time the will was executed and never had had such stock, while he did have the exact number of shares of Class A stock which he bequeathed.

It is a basic principle in the construction of wills that the intention of the testator as gathered from the four corners of the instrument is to prevail if there be apt words used to effectuate it, unless some positive principle of law is contravened or unless the testator's intention was frustrated "by some unbending rule of construction assigning an inflexible meaning to particular words." *Littig v. Hance,* 81 Md. 416, 425, 32 Atl. 343 (1895). See also, *Ball v. Townsend,* 145 Md. 589, 599, 125 Atl. 758 (1924); *McElroy v. Mer.-Safe Dep. Co.,* 229 Md. 276, 282, 182 A. 2d 775 (1962). In this case, the obvious intention of the testator as gathered from the four corners of his will is that the legatees named in Item 2 who, as Judge Carter points out, include the natural objects of his bounty, should receive the stock which constituted almost all of his estate. If that intention is not allowed to prevail, the legatees would receive nothing. The will contains no provision and no way has been suggested by which the testator's Class A stock could be converted into Class B stock without the consent of persons not parties to the case and without depriving the stock of its voting rights, which constitute an important part of its value. There is no unbending rule of construction assigning an inflexible meaning to the particular words "Class B"; on the contrary, the maxim relied upon by the Chancellor to prevent such a frustration of the testator's intent and to cure what seems on the extrinsic evidence to have been an obvious mistake in description, in our opinion, is clearly applicable.

## II

The appellant contends that, even if the lower court's construction of the will, on the extrinsic evidence alone, was proper, other evidence was improperly excluded, which, if admitted, would have changed the result. By stipulation of counsel, we are confined to the opinion of the lower court for the statement of all facts and questions in this case. Judge Carter's statement of the evidence referred to is as follows:

"The will was prepared by Thomas Herlihy, Jr. one of the Executors in 1954. A portion of his testimony; admitted subject to exception concerned conversations with the testator prior to the execution as well as subsequent thereto. The subsequent conversations were held in October, 1954 and February, 1955, after the will was executed in August, 1954. In the first of these conversations the witness testified he pointed out to Mr. Bamberger that since the Class B. stock bequeathed under Item 2 of the Will was non-voting stock and the Class A. stock apparently intended to pass to the Corporation under the residuary clause was voting stock, the complete control of the company upon his death would pass to Albert J. Matlusky the next principal stockholder of the corporation. In the second conversation he pointed out the same matters to the testator and on both occasions was advised that the testator wished the Class B. stock to go to the persons listed in Item 2. and the Class A. stock to go to the corporation, even though that meant that Mr. Matlusky would have control of the corporation. That following the conversations the testator did not change his will. That Herlihy does not know whether the testator was aware that he had no Class B. stock at the time of these conversations. Mr. Albert Matlusky, a distributee under the will and defendant herein also testified to the effect that in 1953, or about a year prior to the execution of the will, he discovered among papers in the corporation office, a rough draft of a letter from Bamberger to Herlihy setting forth Bamberger's

intention to bequeath stock in the company to the persons mentioned in item 2. His testimony concerning his conversation with the testator following this discovery to the effect that the testator informed him he was entirely satisfied with Matlusky's management of the business and wanted such to continue after his death, was admitted subject to exception."

The testimony was offered on behalf of the executors and the corporation. The legatees who were represented moved to strike this evidence; it was admitted subject to exception, but, in his opinion, Judge Carter sustained the exceptions and struck the evidence from the record. He based his decision on the evidence on Code (1957) Article 35, Section 3 (the "Dead Man's Statute").[2]

It is at least doubtful, in our opinion, whether that statute applies to the situation presented in the present case. In *Riley v. Lukens Dredging & Contracting Corporation,* 4 F. Supp. 144 (D.C. Md. 1933) holding that an administratrix *ad prosequendum* appointed in New Jersey was not disqualified under the Maryland statute from giving testimony, since the amount recovered would not become assets of the estate, Judge Chesnut said: "It seems clear * * * that the testimony now excluded by the Act is only that testimony of a party to a cause which would tend to *increase or diminish the estate of a decedent by establishing or defeating a cause of action by or against the estate."* (Emphasis supplied). 4 F. Supp. at 147. This test was approved by us in *Estate of Soothcage v. King,* 227 Md. 142, 150, 176 A. 2d 221 (1961) and *State, Use of Miles v. Brainin,* 224 Md. 156, 164, 166, 167 A. 2d 117 (1961). See also *Shaneybrook v. Blizzard,* 209 Md. 304, 309-310, 121 A. 2d 218 (1956) and note, *The Effect of the Dead Man's Statute on the Testimony of a Party-Witness,* 21 Md. L. Rev. 60 (1961). The excluded

---

**2.** The pertinent parts of the statute provide that "[i]n actions or proceedings by or against executors, administrators, heirs, devisees, legatees or distributees of a decedent as such, in which judgments or decrees may be rendered for or against them * * * no party to the cause shall be allowed to testify as to any transaction had with, or statement made by the testator * * *"

testimony would not have tended to increase or diminish the testator's estate; the only issue here is whether the legatees take the 104 shares of the corporation's Class A stock, or whether that stock goes to the corporation under the residuary clause. In either case, the total amount of the testator's estate stays the same.

We assume, without deciding, that the Dead Man's Statute did not exclude the testimony taken subject to exception. The excluded testimony, insofar as it purported to indicate the testator's intent with respect to his will, as a general principle, would not have been admissible at common law. The rule is that "the declarations of the testator, whether made before, contemporaneously with, or subsequent to the making of the will, cannot be received to affect its construction." *Courtenay v. Courtenay,* 138 Md. 204, 210, 113 Atl. 717 (1921). Where, as in this case, there is a latent ambiguity in the will, declarations of intention are admissible, with extrinsic evidence, in the interpretation of the latent ambiguity, but declarations are admissible only for the purpose of establishing what the testator understood was signified by the words employed in the will. *Darden v. Bright, supra.*

Had the excluded testimony been admitted for this purpose, it would not have changed what we have held to be the proper construction of Item 2 of the will. Herlihy's testimony, set forth in Judge Carter's opinion, related to conversations between Herlihy and the testator subsequent to the execution of the will. (The purport of Herlihy's testimony as to a conversation between him and the testator prior to the execution of the will is not given in the opinion and is therefore not before us.) In these conversations subsequent to the execution of the will, Herlihy referred to the "non-voting stock" bequeathed under Item 2 of the will and the Class A stock "apparently" intended to pass to the corporation under the residuary clause. The emphasis of his remarks was that, under the will, complete control would pass to Matlusky. Herlihy indicates the testator told him he wished the Class B stock to go to the persons listed in Item 2 and the Class A stock to go to the corporation, even though that meant Matlusky would have control of the corporation. Herlihy does not know whether, at the time of these

conversations, the testator was aware that he had no Class B stock. The testator had had a heart attack and a paralytic stroke, and although he had partially recovered, had relinquished the presidency of the corporation. What Herlihy remembers the testator saying to him, in effect, was a reaffirmance of Item 2 of the will, and a willingness that, under the will, Matlusky would have control of the corporation. The testator's reported acquiescence in Herlihy's remark that the Class A stock would "apparently" pass to the corporation under the residuary clause was consistent with the possibility that, before his death, the testator would acquire shares of the corporation's stock in addition to the 104 which he had specifically bequeathed under Item 2, in which case the additional stock would pass under the residuary clause. That clause did not, in terms, refer to any stock.

The testator's reported willingness, or even desire, that control of the corporation, on his death, would pass to Matlusky is consistent with the terms of the will, as we have construed it. At the time the will was executed, the corporation had 174 shares of voting stock outstanding of which the testator owned 104 shares and Matlusky owned 53. Under Item 2, the testator bequeathed Matlusky an additional 9 shares, which would give him a total of 62 shares on the testator's death, or more than one-third of the stock outstanding. The remainder of the testator's stock was bequeathed in varying amounts to a number of individuals and a church. As an experienced business man, the testator may well have believed that, under the circumstances, even though Matlusky would not own a majority of the shares, he would have effective control of the corporation. Item 2 of the will contains a request that each of the legatees named therein, before selling or disposing of the stock bequeathed to him or her, should offer the stock to the corporation and that the corporation should buy it. This provision, if observed, will have the effect of increasing Matlusky's proportionate ownership, and the testator may have had this in mind when he executed the will and in his subsequent conversation with Herlihy.

There is nothing in the excluded testimony as to these conversations to contravene the intent of the testator that the lega-

tees designated in Item 2 should receive the 104 shares of stock of the corporation which he owned, in the respective amounts set forth, or to negate the strong inference that the testator, when he executed the will, knew he had no other shares to bequeath. Where a meaning is doubtful or alternative constructions are possible, the will should be construed to effect the testator's general intent. *McElroy v. Mer.-Safe Dep. Co., supra,* and authorities therein cited. The declarations of the testator, even had the testimony as to them been admitted, do not change what we have found to be his understanding of what was signified by the words used in Item 2 of his will.

The other testimony excluded by the court below does not affect this conclusion. The draft of the letter from the testator to Herlihy about a year before the will was executed, setting forth the testator's intention to bequeath stock in the corporation to the persons mentioned in Item 2, only emphasizes the intent which the will expresses. Matlusky's testimony that, after this letter, the testator informed him that he, the testator, was entirely satisfied with Matlusky's management of the business and wanted Matlusky to continue managing it after the testator died, for the reasons we have given, is consistent with our construction of what the will provides.

*Order affirmed, costs to be paid out of the estate.*